UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHELLE GENTILE, LAURIE BAKER and CHRISTINA NELMES, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>          v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>                    Defendant. | Case No. CV 10-2111 (JFB)(ARL) |

---

## GENTIVA HEALTH SERVICES, INC.'S MOTION TO TRANSFER VENUE
---

LITTLER MENDELSON, P.C.
A. Michael Weber
Sara Danielle Sheinkin
900 Third Avenue
New York, New York 10022
212.583.9600

Attorneys for Defendant
Gentiva Health Services, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................iii

I.      PRELIMINARY STATEMENT ...............................................................................1

II.     STATEMENT OF RELEVANT FACTS ..................................................................2

        A.      Plaintiffs' Claims Against Gentiva.................................................................2

        B.      Gentiva Health Services, Inc. .......................................................................3

                1.      Gentiva is Headquartered in Atlanta, Georgia ....................................3

                2.      Gentiva's Transition to a Pay-Per-Visit Compensation System
                        was Initiated from Atlanta, Georgia.....................................................4

                3.      Gentiva's Connection with the Eastern District of New York is
                        Minimal .................................................................................................4

                4.      Gentiva's Witnesses Will Likely Be Located in or near the
                        Northern District of Georgia (Atlanta Division)...................................5

                        a.      Kathleen Shanahan ....................................................................5

                        b.      John Karr ...................................................................................7

                        c.      Marlene Harrell .........................................................................8

                        d.      Other Potential Witnesses .........................................................9

        C.      Documents....................................................................................................9

        D.      Plaintiffs ....................................................................................................10

III.    ARGUMENT.........................................................................................................11

        A.      Legal Standard ...........................................................................................11

**B.**    **The Action Might Have Been Brought in the Northern District of Georgia** ............................................................................................. 12

**C.**    **A Balance of Factors Favors Transfer to the Northern District of Georgia** .............................................................................................. 12

      **1.**    **Convenience of Parties and Witnesses** .................................... 13

      **2.**    **Locus of Operative Facts and Relative Ease of Access to Sources of Proof** ...................................................................... 17

      **3.**    **The Court Should Give Little Weight to Plaintiffs' Choice of Forum  in Balancing the Factors Affecting Whether a Transfer of Venue Is  Warranted** ........................................................... 18

      **4.**    **Interests of Justice** .................................................................. 19

**IV.**   **CONCLUSION** ...................................................................................... 21

# TABLE OF AUTHORITIES

## CASES

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525
(S.D.N.Y. 2004) .................................................................................................. 13

*Bionx Implants, Inc. v. Biomet, Inc.*, No. 99-Civ.-40, 1999 U.S. Dist. LEXIS 8031
(S.D.N.Y. May 27, 1999) .................................................................................... 11

*Broussard v. Family Dollar Stores, Inc.*, Civil Action No. 05-0892,
2006 U.S. Dist. LEXIS 6587 (W.D. La. Jan. 31, 2006) ...................................... 19

*Cain, et al., v. N.Y.S. Bd. of Elec.*, 630 F. Supp. 221 (E.D.N.Y. 1986) .............................. 11, 18

*Coker v. Bank of America*, 984 F. Supp. 757 (S.D.N.Y. 1997) ......................................... 13, 14

*Connors, et al., v. Lexington Ins. Co., et al.*, 666 F. Supp. 434 (E.D.N.Y. 1987) ..................... 18

*Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529,
2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. June 4, 2007) ..................................... 17

*Farrior v. George Weston Bakeries Dist., Inc.*, No 08-CV-2705,
2009 U.S. Dist. LEXIS 2636 (E.D.N.Y. Jan. 15, 2009) ...................................13, 16, 17, 19

*Frame v. Whole Foods Market, Inc.*, No. 06 Civ. 7058,
2007 U.S. Dist. LEXIS 72720 (S.D.N.Y. Sept. 24, 2007) .................................. 16

*Freeman, et al., v. Hoffman-La Roche Inc., et al.*, No. 06 Civ. 13497,
2007 U.S. Dist. LEXIS 23132 (S.D.N.Y. Mar. 21, 2007) ...................... 13, 18, 20

*In re Geopharma Sec. Litig.*, No. 04 Civ. 9463, 2005 U.S. Dist. LEXIS 8885
(S.D.N.Y. 2005) .................................................................................................. 18

*Lauer v. Saybolt LP, et al.*, No. 09-CV-3442, 2010 U.S. Dist. LEXIS 48147
(E.D.N.Y. May 17, 2010) ............................................................... 12, 13, 18

*Lucas v. Family Dollar Stores of Okla., Inc.*, No. Civ-04-536-M,
2005 U.S. Dist. LEXIS 45521 (W.D. Okla. March 9, 2005) .............................. 20

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102
(2d Cir. 2010) ..................................................................................................... 12

*Olympia Group, Inc. v. Cooper Indus., Inc.*, No. 00 Civ. 7367,
2001 U.S. Dist. LEXIS 6187 (S.D.N.Y. May 14, 2001) .................................... 16

*Royal Ins. Co. of Am. v. Tower Records, Inc. and MTS, Inc.*, No. 02 Civ. 2612,
2002 U.S. Dist. LEXIS 20109 (S.D.N.Y. Oct. 22, 2002) ............................. 16, 20

*Solar v. Superintendent Paul Annetts, et al.,* No. 08 Civ. 5747,
2010 U.S. Dist. LEXIS 30386 (S.D.N.Y. Mar. 16, 2010) ................................................. 19

*United States v. General Motors Corp.*, 183 F. Supp. 858 (S.D.N.Y. 1960)...................... 14, 19

*Van Dusen v. Barrack*, 376 U.S. 612 (1964) .......................................................................... 11

*Ward v. Family Dollar Stores, Inc.,* CV-06-CO-01060-W,
2006 U.S. Dist. LEXIS 96846 (N.D. Ala. Sept. 29, 2006) ................................................ 19

*Zaitsev v. State Farm Fire & Cas. Co.*, No. 05-CV-2098,
2005 U.S. Dist. LEXIS 30325 (E.D.N.Y. Nov. 17, 2005) ........................................... 11, 20

## STATUTES

28 U.S.C. § 1391 ..................................................................................................................... 12

28 U.S.C. § 1404(a) ................................................................................................................... 2

Gentiva Health Services, Inc. ("Gentiva" or the "Company") submits this memorandum of law in support of its motion to transfer this action to the United States District Court for the Northern District of Georgia (Atlanta Division), a proper and more appropriate venue for the litigation.

## I.     PRELIMINARY STATEMENT

In a classic example of forum shopping, Plaintiffs have filed their action in a District with no material connection to their case.  Plaintiffs themselves do not reside within this District.  Gentiva's principal place of business is not within this District.  Not a single Plaintiff ever performed work for Gentiva within this District.  In short, there was no basis for Plaintiffs to file their lawsuit in this District except for their apparent belief that more favorable law will be applied here.

Gentiva's headquarters were previously located in Melville, New York.  But that history cannot form a sufficient basis to keep this action here where there is no other, and no present, connection between this District and Plaintiffs' claims.  Plaintiffs' claims arise out of Gentiva's conversion to a pay-per-visit compensation system for some of its home health care clinicians, which Plaintiffs allege was executed in violation of the Fair Labor Standards Act and state wage and hour law.  The individuals responsible for Gentiva's transition to a pay-per-visit system were, and are, located in Atlanta, Georgia.  By the time the conversion took place, Gentiva had already begun moving the base of its operations from Melville to Atlanta.  Currently, Gentiva is headquartered in Atlanta and almost all of Gentiva's corporate employees work from that location.  The majority of Gentiva's key corporate witnesses in this action are likely to work and reside in or near the Northern District of Georgia.  Gentiva is unaware of any individuals with material knowledge concerning this action who reside within the Eastern District of New York.  Further, since Plaintiffs purport to bring a nation-wide collective action,

Gentiva's managers and home health care clinicians in its branches across the country may have information regarding how the pay-per-visit system was applied in their respective branches, what exceptions and/or variations were made to the pay-per-visit structure in their particular branches, and the number of hours that home health care clinicians in certain branches worked, among other topics.  Few if any managers, and a very small percentage of the home health care clinicians, work within the Eastern District of New York.  Indeed, the vast majority work closer to Atlanta than Central Islip.  Accordingly, the convenience of the parties and witnesses and the interests of justice favor litigating this case in the Northern District of Georgia (Atlanta Division), and Gentiva moves for such a transfer, pursuant to 28 U.S.C. § 1404(a).

## II.     STATEMENT OF RELEVANT FACTS

### A.     Plaintiffs' Claims Against Gentiva

Gentiva is engaged in the business of providing home health care and related services.  (Declaration of John Karr, attached as Exhibit A, ("Karr Decl."), at ¶ 3; Declaration of Kathleen Shanahan, attached as Exhibit B, ("Shanahan Decl.") at ¶ 3.)  Plaintiffs are current and former employees of Gentiva, who performed professional home health care services.  Plaintiffs seek to represent a nationwide class of Registered Nurses, Physical Therapists, and Occupational Therapists.  (Plaintiffs' Complaint ("Pls.' Compl.") at ¶¶ 3, 6.)  Plaintiffs allege that Gentiva's pay-per-visit compensation system, by which some of them were paid, did not comport with the requirements of the law, and that they were not fully compensated for all of their work.  (Pls.' Compl. ¶¶  2, 3, 28, 30.)

In their Complaint, Plaintiffs explained their choice of venue by stating that Gentiva "has designated its principal executive offices at a location in this district."  (Pls.' Compl. ¶ 15.)

**B.     Gentiva Health Services, Inc.**

**1.      Gentiva is Headquartered in Atlanta, Georgia**

Contrary to the assertion in Plaintiffs' Complaint, Gentiva's principal executive offices are not located in this District.  Gentiva's headquarters and principal place of business are located in Atlanta, Georgia.  (Karr Decl. ¶ 3; Shanahan Decl. ¶ 3.)  Gentiva has been headquartered in Atlanta since 2009.  (Karr Decl. ¶ 9; U.S. Securities and Exchange Commission Form 8-K for Gentiva, dated July 30, 2009, attached as Exhibit C.)

Gentiva's management and corporate operations personnel are primarily located in Atlanta.  (Karr Decl. ¶ 11; Shanahan Decl. ¶ 9.)[1]  Gentiva's Human Resources, Compensation and Benefits, Employee Training and Development, Finance, Legal, Compliance, Tax, Procurement, Sales and Marketing, Operations, and Clinical Care departments are in Atlanta.  (Karr Decl. ¶ 11.)  There are approximately 145 corporate employees who work at Gentiva's Atlanta headquarters.  (*Id.*)

In 2006, Gentiva merged with Healthfield Home Health, Inc. ("Healthfield"), another home health care company.  (Karr Decl. ¶ 16; Shanahan Decl. ¶ 8.)  At that time, Healthfield was headquartered in Atlanta and Gentiva was headquartered in Melville, New York.  (Karr Decl. ¶ 16.)  Healthfield did not have an office or any substantive operations within the Eastern District of New York.  (Karr Decl. ¶ 23; Shanahan Decl. ¶ 8.)  After the merger, Gentiva began moving its operations from Melville, New York to Atlanta, Georgia.  (Karr Decl. ¶ 7; Shanahan Decl. ¶ 9.)  That move is now complete.  (*Id.*)

---

[1]     Gentiva also has two smaller administrative centers in Overland Park, Kansas and Tampa, Florida.  (Karr Decl. ¶ 10.)

## 2.      Gentiva's Transition to a Pay-Per-Visit Compensation System was Initiated from Atlanta, Georgia

Prior to Gentiva's merger with Atlanta-based Healthfield, Gentiva did not pay its employees under a pay-per-visit compensation plan.  (Karr Decl. ¶ 19; Shanahan Decl. ¶ 15.) Following the merger, Gentiva personnel based in Atlanta directed the Company's transition from a salary compensation system to the pay-per-visit compensation system for some of its professional home health care clinicians.  (Karr Decl. ¶ 19; Shanahan Decl. ¶ 15.)  This compensation system is at issue in this present litigation. (Pls.' Compl. ¶¶ 2, 3.)

Gentiva leadership in Atlanta, including current Gentiva Vice President for Human Resources, Kathleen Shanahan, managed and oversaw Gentiva's transition to a pay-per-visit system.  (Karr Decl. ¶ 20; Shanahan Decl. ¶¶ 15-18.)  Healthfield employees who would have processed payroll and made significant decisions regarding compensation were located in the Atlanta, Georgia area.  (Karr Decl. ¶ 22; Shanahan Decl. ¶ 13.)  The Gentiva compensation staff, based in Melville, New York at the time, had minimal direct involvement in the Company's decision to transition to the pay-per-visit system.  (Shanahan Decl. ¶¶ 16-17.)  Key documents and strategic planning relating to the pay-per-visit system were primarily created by Gentiva executives in Atlanta, Tampa, and Overland Park—not in New York.  (Karr Decl. ¶¶ 19-20; Shanahan Decl. ¶¶ 16, 18.)

## 3.      Gentiva's Connection with the Eastern District of New York is Minimal

For several years, Gentiva's connections to Melville have been decreasing.  (Karr Decl. ¶ 7.) After the merger in 2006, Gentiva began transitioning its headquarters in Melville, New York to Atlanta, Georgia.  (Karr Decl. ¶ 7; Shanahan Decl. ¶ 9.)  That process is now complete.  (*Id*.)  Currently, there are 13 non-managerial employees working at the Melville, New York location, none of whom are in the Company's compensation, payroll, benefits, or human

resources departments.  (Karr Decl. ¶ 8.)  Gentiva is unaware of any individual with material information concerning Plaintiffs' claims who resides in or near the Eastern District of New York.  (Karr Decl. ¶ 14; Shanahan Decl. ¶ 21.)

### 4.    Gentiva's Witnesses Will Likely Be Located in or near the Northern District of Georgia (Atlanta Division)

Plaintiffs have not yet identified what corporate representatives they will seek to depose and the scope of Plaintiffs' claims is not yet fully developed.  However, it is likely that any Gentiva corporate witnesses relevant to Plaintiffs' allegations in this lawsuit will reside in or near the Northern District of Georgia (Atlanta Division).   Gentiva believes that Kathleen Shanahan, John Karr, and Marlene Harrell are all likely witnesses in this action.  For each, litigation of this action in Atlanta would be significantly more convenient than litigation in Central Islip, New York.

### a.    Kathleen Shanahan

Kathleen Shanahan is Gentiva's Vice President of Human Resources.  (Shanahan Decl. ¶ 1.)  Shanahan works and resides in Atlanta, Georgia.  (Shanahan Decl. ¶ 4.)  Shanahan has worked for Gentiva since 1993, and has been responsible for its Human Resources ("HR") management since 2006, when the Company merged with Healthfield.  (Shanahan Decl. ¶ 7.)  Thus, she has been in a senior leadership role for HR at Gentiva and its predecessor entities since 1993.  (*Id*.)  Shanahan is currently Gentiva's senior executive directly responsible for HR, which includes employment relationship management for all Gentiva employees.  (Shanahan Decl. ¶ 6.)  She has personal knowledge of the subject matter of Plaintiffs' complaint and would be a likely witness in this action.  (*Id*.)

Shanahan can testify concerning the changes implemented in Gentiva's compensation and benefits practices after the 2006 merger with Healthfield, including the

Company's transition from a salary system to a pay-per-visit system for some of the Company's exempt home health care professionals.  (Shanahan Decl. ¶ 6.)  In fact, Shanahan directly participated in the creation of the documents and strategic planning for the pay-per-visit plan from her office in Atlanta, Georgia.  (Shanahan Decl. ¶ 18.)  She also directed the education of branch management regarding safeguards in Gentiva's payroll systems and legal compliance efforts to ensure that employees are paid for all time worked and all services provided.  (*Id.*)  Shanahan could also testify concerning her communications with the U.S. Department of Labor regarding the company's compensation practices and her internal communications concerning the execution of the pay-per-visit compensation system in different locations.  (Shanahan Decl. ¶¶ 18-19.)  Shanahan would also have knowledge concerning different compensation codes for work performed by employees and situations where different Gentiva branches use the same compensation code for different work activities (and other differences among Gentiva's various branches).  (Shanahan Decl. ¶¶ 6, 24.)  In addition, Shanahan's will likely have knowledge concerning other matters that may arise during the litigation relevant to Gentiva's employee relations.  (Shanahan Decl. ¶ 6.)

Shanahan has no reason to travel to any location within the Eastern District of New York.  (Shanahan Decl. ¶ 27.)  Having to engage in such travel would be disruptive to Shanahan both professionally and personally, and would be disruptive to Gentiva's day-to-day operations.  Shanahan supervises four employees in the Atlanta area.  (Shanahan Decl. ¶ 28.)  It would be difficult for Shanahan to perform her supervisory responsibilities while traveling to Melville, New York, which would likely require more than one day out of the office.  (Shanahan Decl. ¶¶ 28-29.)  Shanahan's management responsibilities are critical to Gentiva's day-to-day operations.  Conversely, having to attend litigation matters in Atlanta may only take Shanahan

away from the office for hours at a time, causing significantly less disruption.  (Shanahan Decl. ¶ 29.)  If Shanahan is required to travel to Melville for this legal action, the Company will incur costs for her airfare, hotel, a rental car, and other travel expenses.  (Shanahan Decl. ¶ 31.)  None of these costs would be necessary if this action were to proceed in Atlanta.

### b.  John Karr

John Karr is Gentiva's Vice President of Compensation and Benefits.  (Karr Decl. ¶ 1.)  He works and resides in Atlanta, Georgia.  (Karr Decl. ¶ 4.)  Karr has personal knowledge concerning Plaintiffs' claims in this action and will be able to testify concerning the Company's implementation of the pay-per-visit compensation system.  (Karr Decl. ¶ 6.)  Karr can testify about the Company's transition from a salary system to a pay-per-visit system for some of the Company's exempt home health care professionals, and other changes implemented in Gentiva's compensation and benefits practices since July 2008.  (*Id.*)  Karr can testify to what job tasks the pay-per-visit rates cover and what job tasks the pay-per-visit rates do not cover, and how such other work is compensated.  (*Id.*)  Karr can also testify about other matters that may arise during the litigation concerning Gentiva's compensation and benefits practices and policies.  (*Id.*)

Karr has no reason to travel to any location within the Eastern District of New York.  (Karr Decl. ¶ 28.)  Having to engage in such travel would be disruptive to Karr both professionally and personally, and would be disruptive to Gentiva's operations.  Karr supervises five employees in Atlanta.  (Karr Decl. ¶ 29.)  It would be difficult for Karr to perform his supervisory responsibilities while traveling to Melville, New York, which would likely require more than one day out of the office.  (Karr Decl. ¶¶ 29, 31.)  Karr's management responsibilities are critical to Gentiva's day-to-day operations.  Conversely, having to attend litigation matters in Atlanta may only take Karr away from the office for hours at a time, causing significantly less disruption.  (*Id.*)  If Karr is required to travel to Melville for this legal action, the Company will

have to pay for airfare, a hotel, a rental car, and meals.  (Karr Decl. ¶ 32.)  None of these costs would be necessary if this action were to proceed in Atlanta.

### c.  Marlene Harrell

Another likely witness in this action is Marlene Harrell, a Regional Director for HR.  (Declaration of Marlene Harrell, attached as Exhibit D, ("Harrell Decl.") at ¶ 1.)  Since 2006, Harrell has been responsible for the HR management of several territories of Gentiva branches, including Alabama, Florida, and other regions.  (Harrell Decl. ¶ 4.)

Harrell was involved with, and has knowledge concerning, the implementation of the pay-per-visit compensation system in Gentiva branches throughout Alabama and Florida.  (Harrell Decl. ¶ 5.)  She has knowledge concerning the creation and use of the primary documents for converting some salaried clinicians to a pay-per-visit system, the factors used in determining the per-visit rates offered to clinicians and the tasks included therein, and other compensation paid to clinicians.  (Id.)  She also has knowledge concerning variations in the Company's compensation plan for certain employees and variations in the implementation of the Company's compensation policies at different branches.  (Id.)

During the transition to the pay-per-visit system, Harrell was known as a subject matter expert in pay-per-visit compensation and acted a resource for local management implementing the plan.  (Harrell Decl. ¶¶ 10-11.)  When the pay-per-visit system was first implemented in North Carolina, impacting several of the plaintiffs, Harrell was responsible for HR oversight, manager training, and employee issue response in that region.  (Harrell Decl. ¶ 6.)  Harrell trained Ann Hodges, the Regional HR Director who has been responsible for the Carolinas since mid-2009.  (Harrell Decl. ¶ 7.)  Harrell also educated local management about the compensation transition in other areas of the country, including Georgia, Florida and Alabama.  (Harrell Decl. ¶¶ 11, 12.)

Harrell works and resides in Dothan, Alabama, which is about 200 miles from the federal courthouse in Atlanta, Georgia and over 1,000 miles from the federal courthouse in Central Islip, New York.  (Harrell Decl. ¶¶ 13, 16.)  Harrell travels to Gentiva's headquarters in Atlanta, Georgia, as needed, to work on HR projects for the Company.  (Harrell Decl. ¶ 14.)  The trip takes her less than four hours by car, and she is comfortable with the drive.  (*Id*.)  Harrell has no reason to travel to any location within the Eastern District of New York.  (Harrell Decl. ¶ 15.)  Having to engage in such travel would be disruptive to Harrell both professionally and personally.  (Harrell Decl. ¶ 16.)  It would also be costly for the Company, which would be required to pay for Harrell's airfare, hotel, rental car, and other expenses.  (Harrell Decl. ¶ 18.)

### d.    Other Potential Witnesses

Other current or former Gentiva or Healthfield employees who may have information concerning the Company's compensation policies and practices are also most likely to reside in or around Atlanta.  (Karr Decl. ¶ 27; Shanahan Decl. ¶ 20.)  These potential witnesses who are current Gentiva employees include: Brandon Ballew, Vice President of Finance; Mary Woolstein, Vice President of Business Initiatives; Don Mori, Manager of Compensation; Kim Davis, Senior Compensation Analyst; and Matt Delaney, Senior Compensation Analyst.  (Karr Decl. ¶ 27; Shanahan Decl. ¶ 20.)  The Company is unaware of any individuals with material knowledge concerning Plaintiffs' claims who live in or near the Eastern District of New York.  (Karr Decl. ¶ 14; Shanahan Decl. ¶ 21.)

### C.    Documents

Records relating to the management of Gentiva's compensation system and human resources are located, in paper format, in Atlanta, and are not duplicated elsewhere.  (Karr Decl. ¶ 12; Shanahan Decl. ¶ 14.)  Time records for the plaintiffs and the putative class members are stored in detailed format only as paper records at more than 300 branch offices

around the country.  (Karr Decl. ¶ 24; Shanahan Decl. ¶ 22.)  Compensation practices at Gentiva vary significantly from branch to branch.  (Karr Decl. ¶ 25; Shanahan Decl. ¶ 24.)  Any centralized collection and review of those records would be coordinated through Atlanta.  (Karr Decl. ¶ 26; Shanahan Decl. ¶ 25.)  Gentiva also maintains electronic records concerning patients, billing, visit schedules, visit time, and employee data.  The data is treated as very confidential and sensitive.  For that reason, access to the software is limited.  (Shanahan Decl. ¶ 26.)  Gentiva employees with sufficient knowledge and authority to access and interpret the Company's numerous electronic and paper sources of data regarding employee time and compensation work in Gentiva's Atlanta headquarters, or in Gentiva's Overland Park, Kansas data processing center.  (Karr Decl. ¶ 26; Shanahan Decl. ¶ 25.)  There are no Gentiva employees near the Eastern District of New York with expertise and access to provide national data concerning the compensation of Registered Nurses, Physical Therapists, and Occupational Therapists.  (*Id.*)

### D.     Plaintiffs

None of the named or opt-in Plaintiffs reside in the Eastern District of New York. (Declaration of A. Michael Weber, Esq., attached as Exhibit E, ("Weber Decl.") at ¶ 2.)  None of the named or opt-in Plaintiffs worked for Gentiva within the Eastern District of New York.  (*Id.*) Most of the current plaintiffs reside closer to Atlanta than Central Islip.  (Weber Decl. ¶ 4.) Similarly, most members of the putative class are likely to reside closer to Atlanta than to Central Islip because the majority of Gentiva's branches and employees are situated closer to Atlanta than to Central Islip.  (*See* Karr Decl. ¶ 15; Shanahan Decl. ¶ 11; Weber Decl. ¶ 5.)  The Company's branch locations are disproportionately located around Georgia, compared to New York.  (Karr Decl. ¶ 10; Weber Decl. ¶ 5.)  In fact, more than half of Gentiva's branches are

located in the Southeast region of the Country and it would, thus, be expected that most of the putative class members are from that region.[2]  (Weber Decl. ¶ 5.)

## III.    ARGUMENT

### A.    Legal Standard

28 U.S.C. § 1404(a) provides the Court with discretion to transfer an action to another district where it might have been brought for the "convenience of the parties and witnesses, in the interest of justice."  The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal citations omitted).

Courts apply a two-part test when evaluating a motion to transfer venue:  (1) whether the plaintiffs could have filed the action in the transferee venue; and (2) whether, on balance, the equities favor transfer.  *Zaitsev v. State Farm Fire & Cas. Co.*, No. 05-CV-2098, 2005 U.S. Dist. LEXIS 30325, at *3 (E.D.N.Y. Nov. 17, 2005).  Once it is apparent that the plaintiffs could have filed the case in another district, a court's decision to transfer depends on the balance of convenience and justice.  *Cain, et al., v. N.Y.S. Bd. of Elec.*, 630 F. Supp. 221 (E.D.N.Y. 1986).  In making this determination, a judge has broad discretion based on an individualized, case-by-case consideration of convenience and fairness.  *Bionx Implants, Inc. v. Biomet, Inc.*, No. 99-Civ.-40, 1999 U.S. Dist. LEXIS 8031, at *8 (S.D.N.Y. May 27, 1999); *Zaitsev*, 2005 U.S. Dist. LEXIS 30325, at *3.

---

[2]    For purposes of this motion, "Southeast" is defined to include Alabama, Florida, Georgia, Louisiana, Mississippi, North Carolina, South Carolina, and Tennessee.

**B.      The Action Might Have Been Brought in the Northern District of Georgia**

The threshold question in a transfer motion is whether the action "might have been brought" in the proposed transferee district. *Lauer v. Saybolt LP*, *et al.*, No. 09-CV-3442, 2010 U.S. Dist. LEXIS 48147, at *6 (E.D.N.Y. May 17, 2010).

The civil venue statute, 28 U.S.C. § 1391(b) and (c), provides in pertinent part:

> (b) A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

> (c) For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced. . . .

Gentiva resides and has its principal place of business in Atlanta, Georgia.  (Karr Decl. ¶ 3.)  Atlanta is within the Northern District of Georgia.  Accordingly, Plaintiffs might have brought this action in the Northern District of Georgia, and, thus, the Court may transfer venue to that District.

**C.      A Balance of Factors Favors Transfer to the Northern District of Georgia**

To determine if, on balance, the equities favor transfer, courts regularly consider several factors, including the convenience of the parties and witnesses, the locus of operative facts and relative ease of access to sources of proof, the weight accorded the plaintiff's choice of forum, and the interests of justice.  *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010); *Lauer*, 2010 U.S. Dist. LEXIS 48147, at *6-7.[3]  "There is no strict

---

[3]      Courts also consider factors such as the relative means of the parties, the availability of

formula for the application of these factors, and no single factor is determinative. . . . Instead, these factors should be applied and weighed in the context of the individualized circumstances of the particular case." *Farrior v. George Weston Bakeries Dist., Inc.*, No 08-CV-2705, 2009 U.S. Dist. LEXIS 2636, at *9 (E.D.N.Y. Jan. 15, 2009).

### 1.    Convenience of Parties and Witnesses

"The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue." *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004); *Coker v. Bank of America*, 984 F. Supp. 757, 765 (S.D.N.Y. 1997).

When considering the convenience of the parties, consideration of the parties' residences is a logical and relevant starting point. *Freeman, et al., v. Hoffman-La Roche Inc., et al.*, No. 06 Civ. 13497, 2007 U.S. Dist. LEXIS 23132, at *7-8 (S.D.N.Y. Mar. 21, 2007) Defendant resides in the Northern District of Georgia, the district to which it seeks transfer. Currently, there are five named and 24 opt-in plaintiffs who reside within various districts in Florida, Iowa, Kentucky, Michigan, Mississippi, New Mexico, New York, North Carolina, and Texas. The only plaintiffs who reside in New York are three named Plaintiffs who reside in the Northern (not Eastern) District of New York. (Weber Decl. ¶ 3.) The majority of plaintiffs reside closer to Atlanta than Central Islip. (Weber Decl. ¶ 4.) Because Gentiva is headquartered in the Northern District of Georgia, and none of the plaintiffs reside in the Eastern District of New York, the convenience of the parties and witnesses factor strongly favors transfer. *Coker*, 984 F. Supp. at 765.

---

process to compel the attendance of witnesses to testify at trial, the desirability of having the case tried by the forum familiar with the substantive law to be applied and practical difficulties. *Lauer*, 2010 U.S. Dist. LEXIS 48147, at *11. Although Gentiva does not address each of these factors herein, these factors are either neutral or weigh in favor of transfer.

Another consideration is the inconvenience to Gentiva and its witnesses that will result if the parties are forced to proceed with this action in the Eastern District of New York. "Defendant's convenience must be viewed in light of not only the degree to which its business will be disrupted by trial in one forum rather than another, but also its cost of transporting to a city other than their origin (and maintaining therein) people, files and objects." *United States v. General Motors Corp.*, 183 F. Supp. 858, 861 (S.D.N.Y. 1960); *see also Coker*, 984 F. Supp. at 765, n.4 (where the cost of bringing several willing witnesses to New York in order to testify would be substantial, this factor weighs in favor of transfer). This factor requires consideration of those individuals who are likely to become witnesses in this action.

For likely witnesses Karr and Shanahan, a transfer of this case to the Northern District of Georgia would significantly reduce the inconvenience of this action. Having to testify at deposition and/or trial in Atlanta would be less disruptive to them professionally and personally, and would be less disruptive to Gentiva's operations. A transfer would also eliminate almost entirely any cost to Gentiva relating to these witnesses. Although likely witness Harrell would have to travel regardless of whether the action is transferred, a transfer would greatly reduce the inconvenience of that travel and would eliminate the costs associated with airfare and car rental. Plaintiffs may also seek to depose other officers of Gentiva, who are also likely to reside in Atlanta.[4]

---

[4]   Managers and home health care clinicians in various Gentiva branches may also have relevant information concerning how the pay–per-visit system was applied in their particular branches, what exceptions or variations were made to the pay-per-visit structure in their particular branches, and the number of hours that health professionals in their branches worked. (Shanahan Decl. ¶ 24.) These managers and health care clinicians will be located across the country. Few, if any managers, and a very small percentage of the home health care clinicians will be located within the Eastern District of New York. (Karr Decl. ¶ 13; Shanahan Decl. ¶ 11.) Most will be located closer to Atlanta than Central Islip. (Karr Decl. ¶ 15; Shanahan Decl. ¶ 11.)

It would be both time consuming and expensive for Gentiva's Atlanta-based witnesses to travel to Central Islip, New York for the proceedings in this action.   This inconvenience is magnified by the fact that there is no major airport in or near Central Islip.[5] Major New York City airports, JFK and LaGuardia, are 36 and 45 miles from the Central Islip courthouse, respectively.   (Weber Decl. ¶ 6.)   However, if this action were transferred to the Northern District of Georgia (Atlanta Division), the travel time and expense for Gentiva's Atlanta-based witnesses would be minimal.   Gentiva's headquarters are just 12 miles from the Atlanta courthouse.  (Weber Decl. ¶ 7.)  To the extent that air travel is required for any witness or party, the Hartsfield-Jackson Atlanta International Airport is only approximately 9.5 miles from the Atlanta courthouse.  (*Id.*)  Moreover, transfer to the Northern District of Georgia, and its airport, would be more convenient for the vast majority of managers and home health care providers, including putative class members, who work at Gentiva's numerous branches across the country.

This is not an example of a case where transfer would merely shift the inconvenience from one party to the other.  A transfer to the Northern District of Georgia would greatly reduce, if not eliminate, any inconvenience to Gentiva while placing only minimal, if any, additional burden on Plaintiffs.  Because none of the Plaintiffs are located within the Eastern District of New York, Plaintiffs will be required to travel whether the action remains in Central Islip, New York or is transferred to Atlanta, Georgia.  And, for many of the plaintiffs, the distance and burden of travel will be reduced by a transfer.[6]

---

[5]   Although there is an airport in Islip, it is not a large airport and travel from Atlanta to Islip would likely be more expensive and would take significantly longer, because the flights are not direct.  (Karr Decl. ¶¶ 29, 30; Shanahan Decl. ¶ 29; Weber Decl. ¶¶ 8, 9.)

[6]   Currently, the majority of Plaintiffs reside closer to Atlanta than to Central Islip.  (Weber Decl. ¶ 4.)  There are direct flights to Atlanta from airports near the cities where all of the named

This Court has held a transfer of venue to be appropriate where, as here, the transfer would eliminate inconvenience for the moving party without substantially adding to the non-moving party's inconvenience. *Farrior*, 2009 U.S. Dist. LEXIS 2636, at *22.  In *Farrior*, this Court transferred an action to the district where defendant's headquarters were located, finding that such transfer would result in little, if any, additional inconvenience to plaintiffs because they would have to travel regardless, while at the same time making the forum substantially more convenient for defendants. *Id.* at *22-24; *see also Frame v. Whole Foods Market, Inc.*, No. 06 Civ. 7058, 2007 U.S. Dist. LEXIS 72720, at *16 (S.D.N.Y. Sept. 24, 2007) (finding that transferring case to venue in which defendant is headquartered would eliminate inconvenience for defendant and only slightly more inconvenience plaintiff who would have to travel regardless); *Royal Ins. Co. of Am. v. Tower Records, Inc. and MTS, Inc.*, No. 02 Civ. 2612, 2002 U.S. Dist. LEXIS 20109, at *18 (S.D.N.Y. Oct. 22, 2002) (indicating that courts favor transferring venues where "the plaintiff does not reside in the district where it filed suit and the defendant is seeking transfer to the district in which it is headquartered, because such a transfer does not generally increase the inconvenience to the plaintiff but is much more convenient for the defendant."); *Olympia Group, Inc. v. Cooper Indus., Inc.*, No. 00 Civ. 7367, 2001 U.S. Dist. LEXIS 6187, at *6-7 (S.D.N.Y. May 14, 2001) (finding that convenience of parties factor favors transfer where transfer would reduce inconvenience to one party, while inconvenience would remain essentially the same for the other party).

---

Plaintiffs reside, including from Syracuse, New York and New Bern, North Carolina.  There are no direct flights from those locations to Islip, New York.  (Weber Decl. ¶ 9.)

**2.     Locus of Operative Facts and Relative Ease of Access to Sources of Proof**

The factor which considers the locus of operative facts and relative ease of access to sources of proof, while less crucial than the convenience of parties and witnesses, also favors transfer in this case.  Courts have recognized that "access to proof" in these types of cases is often best served if venue lies in the district encompassing a defendant's headquarters.  *Farrior*, 2009 U.S. Dist. LEXIS 2636, at *8-9 (location of documents, company witnesses, human resources, and legal department are centralized in the transferee forum, and therefore favor transfer).  Although, in this case, many of the relevant documents and witnesses will be located at branch locations across the country, the central location for the coordination of Company witnesses and document collection and review will be Gentiva's headquarters in Atlanta.  (Karr Decl. ¶¶ 11, 12, 13, 26; Shanahan Decl. ¶ 25.)  Many documents, such as records relating to the management of Gentiva's compensation system and human resources, are already located in Atlanta.  (Karr Decl. ¶ 11; Shanahan Decl. ¶ 14.)  Consequently, the balance of factors favors transferring this case to the Northern District of Georgia to substantially lower the costs of providing access to these documents during the course of litigation and for hearings and trial.

Moreover, Gentiva is aware of no events relevant to this matter that took place in the Eastern District of New York.  If any one location were considered central to this action, it would be Atlanta, where substantial aspects of Gentiva's pay-per-visit system, compensation policies and practices were formulated.  This factor favors transfer.  *See, e.g., Earley v. BJ's Wholesale Club, Inc.*, No. 06 Civ. 3529, 2007 U.S. Dist. LEXIS 40125, at *6-7 (S.D.N.Y. June 4, 2007) (finding, in overtime class action, the locus of operative events to be the Company's headquarters, where the Company's overtime policies were likely determined).

3.  **The Court Should Give Little Weight to Plaintiffs' Choice of Forum in Balancing the Factors Affecting Whether a Transfer of Venue Is Warranted.**

Ordinarily, a plaintiff's choice of forum is given substantial deference.  However, several facts in this action significantly diminish the weight that should be given to Plaintiffs' choice.

First, Plaintiffs' choice of forum should receive less consideration because Plaintiffs bring their claims as a purported class action.  *Lauer,* 2010 U.S. Dist. LEXIS 48147, at *12.  Plaintiffs' choice is afforded little weight in a purported class action because numerous potential plaintiffs are each possibly able to make a showing that a particular forum is best suited.  *Freeman*, 2007 U.S. Dist. LEXIS 23132, at *10;  *see also, In re Geopharma Sec. Litig.*, No. 04 Civ. 9463, 2005 U.S. Dist. LEXIS 8885, at *2 (S.D.N.Y. 2005) ("plaintiff's choice of forum is given less deference "when a plaintiff seeks to represent a widely dispersed class.") (internal citations omitted); *Connors, et al., v. Lexington Ins. Co.*, *et al.*, 666 F. Supp. 434, 454 (E.D.N.Y. 1987) (same).

Second, Plaintiffs' choice of forum is not entitled to the weight generally accorded such a decision because, as described above, a material connection or significant contact between the forum and the events allegedly underlying the cause of action is lacking. *Cain*, 630 F. Supp. at 227.

Third, Plaintiffs' choice of forum is less compelling where, as here, Plaintiffs have chosen a forum that is not their home district.  *Freeman*, 2007 U.S. Dist. LEXIS 23132, at *10.   None of the plaintiffs reside within the Eastern District of New York.  (Weber Decl. ¶ 2.) Three of the plaintiffs live in New York State, but reside within the boundaries of the Northern District of New York**,** approximately 300 miles from the Eastern District of New York, Central Islip Courthouse. (Weber Decl. ¶ 3.)  It is well-settled that "[a] plaintiff may not, by choice of an

inconvenient forum, inflict upon the defendant expense and trouble not necessary to plaintiff's own right to pursue his remedy."  *General Motors Corp.*, 183 F. Supp. at 860.

Given these facts, any minimal deference awarded to Plaintiffs' choice of forum is substantially outweighed by the other factors favoring transfer – including the fact that many of Gentiva's witnesses are in the Northern District of Georgia, and no witnesses are in this District.  *Farrior*, 2009 U.S. Dist. LEXIS 2636, at *8-9; *see also, Solar v. Superintendent Paul Annetts, et al.*, No. 08 Civ. 5747, 2010 U.S.Dist. LEXIS 30386, at *14 (S.D.N.Y. Mar. 16, 2010) ("Where the only factor weighing against transfer is the plaintiff's choice of venue, that is insufficient to keep the action before this Court when the remaining factors support a transfer.") (quotations and citations omitted); *General Motors Corp.*, 183 F. Supp. at 860 ("[T]he court may transfer an action to a more suitable forum when the plaintiff's choice of forum, although permitted by a venue statute, probably will work a substantial hardship upon the defendant and the witnesses, which hardship cannot be justified by a showing of countervailing convenience or necessity on the plaintiff's part.").[7]

### 4.    Interests of Justice

For similar reasons, the interests of justice also favor transfer of this action.  No Plaintiffs reside in this District.  No witnesses reside in this District.  And no events relevant to Plaintiffs' claims took place in this District.  The interests of justice do not support maintaining Plaintiffs' claims against Gentiva here.  Rather, the interests of justice support transfer to

---

[7]    *See also Ward v. Family Dollar Stores, Inc.,* CV-06-CO-01060-W, 2006 U.S. Dist. LEXIS 96846, at *6 (N.D. Ala. Sept. 29, 2006) ("[w]here [as here] there are potentially hundreds . . . of plaintiffs from many different states, deference to the plaintiff's chosen forum is considerably weakened.") (citations omitted); *Broussard v. Family Dollar Stores, Inc.,* Civil Action No. 05-0892, 2006 U.S. Dist. LEXIS 6587, at *4-5 (W.D. La. Jan. 31, 2006) ("plaintiff's choice of forum, while a factor to be considered, is neither conclusive nor determinative.") (citations omitted); *Lucas v. Family Dollar Stores of Okla., Inc.*, No. Civ-04-536-M, 2005 U.S. Dist.

Atlanta, where Defendant's headquarters is located, where many of Defendant's witnesses are located, where Defendant will collect, organize and store documents related to this case, and from where Defendant created the pay-per-visit compensation system being challenged in this action.

Trial efficiency, such as "the docket conditions and calendar congestion of both the transferor and the transferee districts" can also be a relevant factor. *Royal Ins. Co.*, 2002 U.S. Dist. LEXIS 20109, at *27; *Zaitsev*, 2005 U.S. Dist. LEXIS 30325, at *12 (E.D.N.Y. Nov. 17, 2005 ).   According to the latest Judicial Caseload Statistics, the Northern District of Georgia's civil case docket is less crowded than the Eastern District of New York's.  Statistics available on uscourts.gov show that for the twelve-month period ending March 31, 2009, 9,561 cases were pending in the Eastern District of New York, for an average per-judgeship caseload of 637 pending cases.  (Exhibit F.)  In that same period, the Northern District of Georgia had 3,936 pending cases, for an average per-judgeship caseload of 358 pending cases.  (Exhibit G.) Thus, this District undoubtedly has a more crowded docket, which supports transferring this case to the Northern District of Georgia.

Another important interest to be considered is the discouragement of forum shopping.  *Freeman*, 2007 U.S. Dist. Lexis 23132, at *12.   Upon information and belief, Plaintiffs filed their lawsuit in the Eastern District of New York to gain a tactical advantage based on their belief that this District has more favorable law, *not* because this District has a greater (or any) connection to their claims.  The discouragement of such forum shopping further favors the transfer of this action.

---

LEXIS 45521, at *7 (W.D. Okla. March 9, 2005) ("[B]ecause [plaintiff] is suing as a class representative, the Court finds that [plaintiff's] choice of forum is entitled to less deference").

IV.    CONCLUSION

As discussed herein, several relevant factors favor transfer to the Northern District of Georgia, and no significant factors favor this Court's retention of the action.  Accordingly transfer is warranted by the facts of this case, and Gentiva respectfully requests that the Court grant its request to transfer this action to the Northern District of Georgia (Atlanta Division).

Dated: New York, New York.
        August 9, 2010

By:    /s Sara D. Sheinkin
        A. Michael Weber (mweber@littler.com)
        Sara D. Sheinkin (ssheinkin@littler.com)
        LITTLER MENDELSON, P.C.
        900 Third Avenue
        New York, NY  10022.3298
        212.583.9600

        Attorneys for Defendant
        Gentiva Health Services, Inc.