# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

LISA RINDFLEISCH, TIFFANY
MELENDEZ, MICHELLE GENTILE,
LAURIE BAKER and CHRISTINA
NELMES, on behalf of themselves and
others similarly situated,

                  Civil Action No. CV-10-2111
                      (JFB)(ARL)

                Plaintiffs,

v.

GENTIVA HEALTH SERVICES, INC.,

                Defendant.

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

**COHEN MILSTEIN SELLERS & TOLL, PLLC**
Christine E. Webber
1100 New York Avenue, NW
Suite 500
Washington, DC  20005
(202) 408-4600
cwebber@cohenmilstein.com

**MARTIN & JONES, PLLC**
H. Forest Horne, Jr., NCSB # 16678
Gilda A. Hernandez, NCSB # 36812
410 Glenwood Avenue, Suite 200
Raleigh, North Carolina 27603
(919) 821-0005
hfh@m-j.com

***Counsel for Plaintiffs***

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  INTRODUCTION ....................................................................................................3

III. FACTUAL BACKGROUND ....................................................................................5

    a.  From Its Melville, New York Corporate Office – Gentiva Expands Its Existing PPV Practice Because It Reduces Its Labor Costs While Increasing Its Profit With Medicare's Higher Reimbursement Levels ..................5

    b.  Gentiva's Melville, New York Executive Team Was Responsible For Planning, Strategizing And Executing The Investment In the Uniform PPV Compensation Practice ........................................................................7

    c.  Gentiva Adopted The Unlawful PPV Compensation Practice Before 2006 ..........8

    d.  Many Of Gentiva's Current And/Or Former Corporate Witnesses Will Be Located In Or Near The Eastern District of New York ........................................8

        1.  John Potapchuck ...................................................................................9
        2.  Bob Creamer .........................................................................................9
        3.  Dan Walker .......................................................................................9,10
        4.  Michelle Rosenblum ...........................................................................10
        5.  Sue Ellen Stewart ...............................................................................11
        6.  Sharon Del Favero .........................................................................11,12
        7.  Bruce Reardon ................................................................................12, 13
        8.  Mary Morrisey-Gabriel ......................................................................13
        9.  Named Plaintiffs And Other Potential Witnesses ..............................13,14

IV.  ARGUMENT .........................................................................................................15

    a.  Gentiva Failed To Meet Its Burden Under 28 U.S.C. § 1404(a) ..........................15

    b.  Venue Is Proper In The Eastern District Of New York And Should Not Be Disturbed ................................................................................................16

    c.  Because the Factors Favor Maintaining This Case In The Eastern District Of New York And None That Compel A Transfer To The Northern District Of Georgia, Plaintiffs Ask The Court To Deny The Defendant's Motion ....................................................................................................17

        1.  Plaintiffs' Choice Of Forum And Locus Of The Operative Facts Favors Plaintiffs ...................................................................................17

2.   The Plaintiffs Reside In New York And Have Performed All Of
     Their Work For Gentiva In This State.  The Convenience Of The
     Parties Favors The Plaintiffs ...................................................................19

3.   The Convenience Of Witnesses and The Availability Of Process
     To Compel The Appearance Of Witnesses Favors The Plaintiffs ...........20

4.   The Location Of Relevant Documents Favors Plaintiffs ....................20,21

5.   The Relative Means Of The Parties Favors Plaintiffs ............................21

6.   Forum's Familiarity With Governing Law Favors Plaintiffs'
     Choice Of Forum...................................................................................22

7.   Interests Of Justice ................................................................................23

V.   CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES

Cases

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n., Inc. v. Lafarge N. Am., Inc.,*
   474 F.Supp.2d 474 (S.D.N.Y. 2007)..........................................................21

*Bristol-Myers Squid Co. v. Andrx Pharms., LLC,*
   No. 03 Civ.2503, 2003 WL 22888804 (S.D.N.Y. 2003) ......................5, 15

*Christina Canada, Inc. v. Wior Corp.,*
   702 F. Supp. 461 (S.D.N.Y. 1988)............................................................15

*DiStefano v. Carozzi N. Am., Inc.,*
   No. 98 Civ 7137 (SJ), 2002 WL 31640476 (E.D.N.Y. Nov. 16, 2002)....................21

*Earley v. BJ's Wholesale Club, Inc.,*
   No. 06 Civ. 3529, 2007 WL 1624757 (S.D.N.Y. June 4, 2007).........................15, 17

*Farrior v. George Westin Bakeries Dist., Inc.,*
   No. 08-CV-2705, 2009 (E.D.N.Y. Jan. 15, 2009) ...........................16, 20

*Gulf Ins. Co. v. Glasbrenner,* 417 F.3d at 356 (2nd Cir. 2005) ....................16

*Gulf Oil Corp. v. Gilbert,*
   330 U.S. 501 (1947)..................................................................................15

*Guzman v. VLM, Inc.,*
   No. 07-cv-1126 (JG)(RER) 2008 WL 597186 (E.D.N.Y. Mar. 02, 2008) ...............22

*Hernandez v. Graebel Van Lyons,*
   761 F. Supp. 983 (E.D.N.Y. 1991) ...................................................15, 16

*Howard v. Four Seasons Hotels, Ltd.,*
   No. 96 Civ. 4587, 1997 WL 107633 (S.D.N.Y. Mar. 10, 1997) ...............15

*Linzer v. EMI Blackwood Music, Inc.,*
   904 F. Supp.207 (S.D.N.Y. 1996)..............................................................16

*Minett v. Time Warner,*
   997 F.2d 1023 (2d Cir. 1993) ...................................................................15

*Moreno-Bravo v. Gonzales,*
   436 F.3d 235 (2nd Cir. 2006)....................................................................16

*Myers v. Lennar Corp.*,
   2010 WL 1992200 (E.D.N.Y. May 17, 2010) .................................................................5, 15, 22

*Nabisco, Inc. v. Brach's Confections, Inc.*,
   No. 00 Civ 5875, 2000 WL 1677935 (S.D.N.Y. Nov. 8, 2000) ................................................15

*Overnight Transp. Co. v. Tianti*,
   926 F.2d 220 (2nd Cir. 1991)..................................................................................................22

*Panterra Engineered Plastics, Inc. v. Transportation F.Y.S. Solutions, LLC*,
   455 F.Supp.2d 104 (D. Conn. 2006) .......................................................................................16

*Tucker Anthony, Inc. v. Bankers Trust Co.*,
   No. 93 Civ. 0257, 1994 WL 9683 (S.D.N.Y. Jan. 10, 1994) ...................................................23

<u>Statutes</u>

28 U.S.C. § 1404(A) ...............................................................................................................4, 15
29 U.S.C. § 201......................................................................................................................3
N.C. GEN. STAT. § 95-25.1 ......................................................................................................4
NEW YORK LABOR LAW ARTICLE 19, §§ 650...................................................................4

<u>Other Authorities</u>

www.referenceforbusiness.com/history2/48/gentiva-health-services-inc.html .............................1

## I.  PRELIMINARY STATEMENT

Gentiva Health Services, Inc. ("Gentiva"), accuses Plaintiffs of "forum shopping" because in its opinion, "this case has no material connection to this district."  (*See* Def. Mem. p. 1.)  Nothing could be further from the truth.  Plaintiffs filed this action in the Eastern District of New York because at that time, and even now, Gentiva represents to the states of New York, North Carolina, Georgia, West Virginia, Wisconsin, Utah, Tennessee, Oregon, New Mexico, Nebraska, Mississippi, Montana, Massachusetts, Louisana, Iowa, Colorado, Arizona, Alabama, Pennsylvania, Indiana, Kansas, Florida, and California that its principal place of business is located at 3 Huntington Quadrangle, Melville, New York. (*See* Gentiva filings with various Department of State(s), Division of Corporations; (attached hereto as Exhibits A-W.)  Gentiva maintained its headquarters in Melville, New York from the time of its incorporation in 2000 until it completed its move to Georgia in June 2010, <u>after</u> the filing of this action.  (*See* Def. Mem., Ex. B Shanahan ¶ 9.)  In addition, the majority of named Plaintiffs and many witnesses that Plaintiffs believe have knowledge of the operative facts reside in New York.  Therefore, contrary to Gentiva's accusations, no forum shopping was involved.[1]

Gentiva is the largest home health services company in the United States, serving 500,000 customers in almost every state through more than 400 company-operated locations and 11 third-party providers.  *See* *www.referenceforbusiness.com/history2/48/_Gentiva-Health-Services-Inc.html* (attached hereto as Exhibit "X".)  Gentiva's services include: nursing; social work; nutrition; disease management education; physical, occupational, speech, and neuro-rehabilitation services.  (*Id.*)

---

[1]  While Plaintiffs could have either filed this action in the Northern or Eastern District of New York, Plaintiffs settled on the Eastern District due to its convenience to both JFK and LaGuardia airports, which would not only be convenient for the majority of the named Plaintiffs, but also convenient for anyone having to travel to New York.

Although Gentiva contends its merger with Healthfield Group, Inc. ("Healthfield") in 2006 led to the change in its compensation practice from a salary basis to a Pay-Per-Visit ("PPV"), Gentiva's PPV practice was being utilized prior to its merger with Healthfield. (*See* Gentiva's SEC report filing (8-K) 2006; (attached hereto as Exhibit Y, pp. 5-6)). [2] For Gentiva, acquiring Healthfield was part of a strategy to decrease labor costs with the expansion of the PPV practice, increase its Medicare patient base, and enter a new area of healthcare, the hospice business. (*Id.*)     Contrary to Gentiva's assertions that, "prior to Gentiva's merger with Healthfield, Gentiva did not pay its employees under a pay-per-visit compensation plan," the evidence demonstrates that Gentiva utilized the PPV practice before the merger with Healthfield. (*See* Def. Mem's p. 4, Karr Decl. ¶ 19; Shanahan Decl. ¶ 15. Gentiva's 2006 8-K states"[T]he [Gentiva] clinical associates are employed either on a full-time basis or are paid on a **per visit**, per shift, per diem or per hour basis." Ex. Y, p. 14.)

Gentiva's roots started in this district with the Olsten Corporation, founded by William Olsten in the state of New York.  Gentiva's success was based on the ideas, research and developments that took place within the Eastern District of New York – in Melville, New York with Gentiva's executive management team based in this district.  (*See* Ex. X, pp. 1-3; Ex. Y, pp. 5-7, 18-19.)  In fact, prior to Gentiva's acquistion of Healthfield, which took place on January 4, 2006, Gentiva had "approximately 4,300 full-time employees, and 9,700 "non-salaried" clinical associates."  (*See* Ex. Y, pp. 5, 16, 20.)

While Healthfield utilized the PPV compensation practice prior to its merger with Gentiva, the PPV practice existed at Gentiva before the merger.  (*See* Def. Mem's p. 4, Karr Decl. ¶ 19; Shanahan Decl. ¶ 15; *see also* Ex. Y, pp. 14, 16.)  The merger between Gentiva

---

[2] This information was located on the internet at www.sec.edgardonline.com/Gentiva-Health-Services-Inc./8-K-current-report-filing (2006).

and Healthfield was about **increasing** Gentiva's Medicare business while also **expanding** its PPV compensation practice across all of their offices in 39 states.  (*Id*.)  The PPV compensation practice in conjunction with Medicare reimbursements dramatically increased Gentiva's profits.  (*Id*.)  Thus, the research and development to **increase Gentiva's** Medicare reimbursements and **expand** the PPV compensation practice occurred in Melville, New York where Gentiva's headquarters were located from 2000 until June 2010, (after the filing of this case.) (*See* Gentiva's filings with the SEC from 2006 until 2010); (attached hereto as Exhibits JJ-OO.)

 Current and/or former Gentiva corporate witnesses with material knowledge concerning the plan to **increase** Gentiva's PPV compensation practice reside within or near the Eastern District of New York.  (*See* Ex. Y, pp. 14, 16.)  In fact, there are four (4) Gentiva offices in this district, including major administrative offices.  (*See* Def. Mem. Karr's Decl. ¶ 13.)  As its own personnel admit, "Gentiva began moving its operations from Melville, New York to Atlanta, Georgia.  That process was completed in June 2010."  (*See* Def. Mem. Shanahan's Decl. ¶ 9.)  Since Gentiva's headquarters was located in New York from its founding in 2000 through the completion of its move in 2010, and since Gentiva witnesses reside in New York, for the convenience of the parties and witnesses, and in the interests of justice, this case should be maintained in the Eastern District of New York.

## II. <u>INTRODUCTION</u>

 Plaintiffs Lisa Rindfleisch, Tiffany Melendez, Michelle Gentile, Laurie Baker and Christina Nelmes (collectively "Plaintiffs") were "Clinicians" or "Clinical Associates" who Gentiva paid pursuant to an unlawful hybrid compensation plan which included PPV payments for patient visits, an hourly rate basis for training and mandatory conferences –

3

which were not always compensated in their entirety - and no compensation at all for required after-hours "charting" and driving time.[3] (Compl. ¶¶ 2, 3, 28, 30.) While Defendant Gentiva maintains a record of the actual time named Plaintiffs and those similarly situated spent in patient visits, Gentiva chose to disregard actual time worked and did not compensate Plaintiffs for <u>all</u> of their time spent with patients, in conferences with their manager of clinical practice ("MCP"), staff meetings, training time, orientation time, and time spent "charting" treatment and evaluation of patient visits.  (*Id.*)  Plaintiffs brought this action for Gentiva's failure to pay New York employees for all hours worked in violation of New York Labor Law Article 19, § 650, *et seq.*, and for its failure to properly pay North Carolina employees for all hours worked in violation of the North Carolina Wage Hour Act ("NCWHA), N.C. Gen Stat. § 95-25.1, *et. seq.*

Plaintiffs filed this action on May 10, 2010 in the Eastern District of New York, where Gentiva still represents to the state of New York and 22 other states that its principal place of business is located in Melville, New York.  (*See* Exs. A-W;[4] *See also* Atlanta Business Chronicle article dated February 27, 2009; (attached hereto as Exhibit Z.)  Again, one of Gentiva's own affiants, Kathleen Shananhan, states that Gentiva's move to Georgia (from New York) was not completed until <u>after</u> this action was filed.  (*See* Def. Mem., Shananhan's Decl. ¶ 9.)

On June 22, 2010 Gentiva filed a Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a).  In support of its Motion, Gentiva accuses Plaintiffs of forum shopping and asserts

---

[3] Citations "Compl. ¶ __ " refer to Plaintiffs' Complaint filed May 10, 2010.
[4] According to a February 27, 2009 article in the Atlanta Business Chronicle, Gentiva announced the relocation of its headquarters from New York to Georgia in 2009.  According to the article, the move from New York to Georgia was "to be completed next year [2010]."  Plaintiffs' claims relate to damages beginning in May 2007, when Gentiva's headquarters were located in New York.  Until this day, Gentiva still represents to the majority of the states where it conducts business that its principal place of business is located within this district.  *See* Exs. A-W.

that a transfer to the Northern District of Georgia would promote the convenience of the parties and advance the interests of justice.  Gentiva fails, however, to meet its burden to clearly establish the convenience of the parties and that the interests of justice are better served by the transferee forum.  *See Myers v. Lennar Corp.,* 2010 WL 1992200, at *1 (E.D.N.Y. May 17, 2010); *Bristol-Myers Squibb Co. v. Andrx Pharms., LLC,* 2003 WL 22888804, at *2 (S.D.N.Y. 2003).  Accordingly, Gentiva's Motion to Transfer Venue should be denied.

## III.   <u>FACTUAL BACKGROUND</u>

Plaintiffs Lisa Rindfleisch, Tiffany Melendez, and Michelle Gentile were employed by Gentiva in its Auburn, New York office. (*See* Compl. ¶ 16.)  Plaintiffs Laurie Baker and Christine Nelmes were employed in Gentiva's Kinston, North Carolina office.  (*Id.*)  No named or opt-in Plaintiffs were employed by Gentiva in Georgia.

While Gentiva claims in its memorandum that its headquarters had been in Atlanta, Georgia since 2009, Gentiva's filings with New York, North Carolina, Georgia and the many other states named *supra,* attested that its headquarters is located at 3 Huntington Quadrangle, Melville, New York.  (*See* Exs. A-W.)  Importantly, Gentiva itself, through its own affiant states that the move from New York to Atlanta, Georgia was not even completed until June 2010 – which is <u>after</u> Plaintiffs' filed this action.  (*See* Def.'s Ex. B, Shanahan's Decl. ¶ 9.)

### A.  From Its Melville, New York Corporate Office – Gentiva Expanded Its Existing PPV Practice Because It Reduced Its Labor Costs While Increasing Its Profit With Medicare's Higher Reimbursement Levels.

Gentiva's February 2006 report filed with the SEC indicated the following:

As of October 2, 2005, Gentiva's workforce consisted of approximately 4,300 full-time associates, including 1,200 salaried clinical associates.  The average

number of **non-salaried** clinical associates employed on a weekly basis in the home health services business was approximately 9,700.

(*See* Ex. Y, p. 20.)

Further, Gentiva's report filed with the SEC states that during the last 12 months ("LTM") period ending October 2, 2005, (prior to its merger with Healthfield), revenues derived from home healthcare services consisted of 62%. (*See* Ex. Y, p. 14.)  Gentiva's report also states that "clinical associates in the LTM period ending October 2, 2005 were "employed either on full-time basis or were paid on a **per visit**, per shift, per diem or per hour basis." (*See* Ex. Y, p. 14.)  On the other hand, Healthfield reported that revenue derived from home healthcare services consisted of 65%. (*See* Ex. Y, pp. 22-23, 25.)  Additionally, Healthfield reported that it had "approximately 2,700 full-time employees and 1,300 **non-salaried** clinical associates." (*Id.*)

As Gentiva's research further demonstrated, "while out-of-pocket private health insurance costs remained substantially the same, federal, state and local funded programs were projected to increase substantially through 2014." (*See* Ex. Y, pp. 7, 9.)  Gentiva's decision to expand the PPV compensation practice made practical business sense because Medicare reimbursements were becoming more favorable, healthcare expenditures were expected to increase, and the PPV compensation practice would decrease Gentiva's labor costs.  These strategies, research and development regarding the PPV compensation practice, (in conjunction with attracting more Medicare patients) were made while Gentiva's principal place of business was recognized as Melville, New York *prior* to 2006 through 2010.  (*See* Ex. Y, pp. 5, 14, 16, 20, 22-23, 25); (*See also* Exs. JJ-OO.)

**B. Gentiva's Melville, New York Executive Team Was Responsible For Planning, Strategizing And Executing The Investment In The Uniform PPV Compensation Practice.**

Indeed, the merger between Gentiva and Healthfield created tremendous potential for Gentiva, but it was Gentiva's executive management team, including New York residents and Chairman of the Board, Ron Malone, and former Chief Financial Officer, John Potapchuck, who streamlined and focused the company by improving operations, including diversifying its "payer" mix to include and attract more Medicare patients.  (*See* Ex. Y, p. 12); (*see also* Ronald A. Malone Profile-Forbes.com; attached hereto as Exhibit AA); (*see also* Amended Severance Agreement with John R. Potapchuck; attached hereto as Exhibit BB).  Plaintiffs believe these current and/or former Gentiva corporate officials still reside within or near this district and will provide information on Gentiva's pay practices.  (*See* Exs. B-I, K, L, P, R, V); (*Id.*)  Contrary to Gentiva's assertion that management in corporate operations personnel are primarily located in Atlanta, Georgia, Gentiva's filings with the SEC affirm the following:

> Gentiva's direct home nursing and therapy operations are organized into five (5) geographic regions, each staffed with clinical, operational and sales teams. Regions are further separated into operating areas.  Each operating area includes branch locations through which home healthcare agencies operate. Each agency is led by a director and is staffed by clinical and administrative support staff as well as clinical associates who deliver direct patient care.

(*See* Ex. Y, p. 14.)

Further, given John Potapchuck's history with Gentiva, joining Gentiva's predecessor in 1991 and serving in various corporate financial management positions, including Chief Financial Officer, he will provide relevant information regarding Gentiva's expansion of the PPV compensation practice.  Additionally, Mr. Potapchuck resides in the Eastern District of New York as Gentiva's Special Advisor to the Chief Financial Officer.  (*See* Ex. BB.)

7

Bob Creamer, former Senior Vice President of Home Healthcare Operations, will also provide information relating to Gentiva's day-to-day home healthcare operations and elaborate on field leadership teams.  (*See* Ex. Y, p. 20.)  Bob Creamer currently serves as the Chief Executive Officer for a homehealth agency, Loving Care Agency, Inc., located in Ridgefield Park, New Jersey.  He is a witness that resides within a 100 miles of this district.  (*See* Loving Care Agency, Inc., news/announcements/press releases); (attached hereto as Exhibit CC.).

### C. Gentiva Adopted The Unlawful PPV Compensation Practice Before 2006.

As previously noted, Gentiva's assertion that prior to its merger with Healthfield, Gentiva did not pay its Clinicians under a PPV compensation practice is simply untrue.   (*See* Def. Mem's p. 4; *see also* Ex. Y, p. 14.)  During Gentiva's LTM, period ending October 2, 2005, Gentiva's workforce consisted of approximately 4,300 full-time associates, including *only* 1,200 salaried Clinical Associates.  (*Id.* at 20.)  At the time of the Gentiva/Healthfield merger, Gentiva had several thousand more <u>non-salaried</u> Clinical Associates than Healthfield.  (*Id.* at 21-25.)  The Gentiva/Healthfield merger was part of Gentiva's plan to **expand** the PPV compensation practice whereby it reduced its labor costs and increased profitability on Medicare payments.  (*Id.*)

### D. Many Of Gentiva's Current And/Or Former Corporate Witnesses Will Be Located In Or Near The Eastern District Of New York.

Plaintiffs will seek discovery from Gentiva's key current and/or former executive employees based in Melville, New York for information relating to their PPV compensation practices, including the formulations and strategies to increase and expand its investment in the PPV practice. Many of these individuals live in or near the Eastern District of New York; including John Potapchuck, Bob Creamer, Mary Morrisey-Gabriel, Dan Walker, Michelle Rosenblum, Sue Ellen Stewart, Sharon Del Favero, and Bruce Reardon.  (*See* Ex. Y, p. 12; Ex. AA-FF.)  These individuals will provide valuable information regarding Gentiva's initiatives to

increase its dependence on Medicare while also expanding the PPV practice to decrease labor costs in New York as well as other states to boost Gentiva's Medicare profits.

### 1.    John Potapchuck

John Potapchuck has served in several key Gentiva positions since 1991, including Vice President and Operations Controller and Vice President of Finance.  Plaintiffs anticipate John Potpchuck will be able to explain how Gentiva managed to have so few (1,200) salaried Clinical Associates, while maintaining 9,700 <u>non-salaried</u> Clinical Associates, including employees paid on a PPV basis prior to Gentiva's merger with Healthfield.  (*See* Ex. Y, p. 19.)  John Potapchuck currently resides in the Eastern District of New York.  (*See* Ex. BB.)  He currently serves as Special Advisor to Gentiva's Chief Financial Officer.  (*Id.*)

### 2.    Bob Creamer

In 2006, Bob Creamer was part of Gentiva's Melville, New York's executive management team.  (*See* Ex. Y, p. 20.)   He served as the Senior Vice President, Home Health Care Operations.  He oversaw Gentiva's day-to-day home healthcare operations and worked with the field leadership teams to ensure the extensive branch network was moving in the proper strategic direction.  (*Id.*)  Plaintiffs believe Bob Creamer resides in or near the Eastern District of New York, and that he can provide valuable information regarding Clinicians' required daily activities, patient visit expectations, policies and procedures relating to the required documentation and/or "charting time," etc.  (*See* Ex. Y, p. 20; *see also* Ex. CC.)

### 3.    Dan Walker

As previously stated, Gentiva is organized into five (5) geographic regions, each staffed with clinical, operational and sales teams.  (*See* Ex. Y, p. 14.)  Upon information and belief, Dan Walker is the Regional Vice President responsible for the geographic region comprised of New

York, Connecticut and Massachusetts. Plaintiffs believe Dan Walker will provide relevant information relating to the PPV compensation system for the state of New York; how the transition occurred in the state of New York across the various offices; each location's operational policies and procedures; potential distinctions among the offices in terms of the PPV system; the factors used in determining the per visit rates offered to Clinicians and the tasks included; Clinicians' policies and procedures relating to documentation and patient visits.  Upon information and belief, New York was part of Mr. Walker's geographic region, and it makes more sense to have him travel to the Eastern District of New York than to Atlanta, Georgia. Additionally, it would be more cost effective for him and Gentiva to travel to the Eastern District of New York than to Atlanta, Georgia.

### 4.        Michelle Rosenblum

Upon information and belief, Michelle Rosenblum is  Gentiva's Area Vice President, and her geographic region is limited only to the state of New York.  Plaintiffs believe she was based out of the Bronx, New York office – within this district – for quite some time before being transferred to upstate New York.   Plaintiffs believe she will provide valuable information relating to the day-to-day operations of each office in the state of New York; how each office in New York was staffed; the Branch Director's responsibilities for the New York offices; Clinician training at the outset of their employment with Gentiva; Clinician's orientation processes and procedures in the state of New York; required coding for various patient visits; the hourly rates paid to Clinicians for tasks other than patient visits; the policies and procedures relating to "charting" for Medicare and/or private insurers.  Upon information and belief, Ms. Rosenblum resides in or near the Eastern District of New York, and it makes more sense to have her travel to the Eastern District of New York than to Atlanta, Georgia.  Additionally, it would

be more cost effective for her and/or Gentiva to travel to the Eastern District of New York than
to Atlanta, Georgia.

### 5.      Sue Ellen Stewart

Upon information and belief, Sue Ellen Stewart is Gentiva's former Area Vice President
for the state of New York.  Plaintiffs believe she was primarily responsible for the geographic
state of New York, and every branch location within the state of New York was within her
responsibility.  Like Ms. Rosenblum, her responsibilities included the day-to-day operations of
each office in the state of New York.  Plaintiffs believe she will provide valuable information
regarding how each New York office was staffed; the Branch Directors' and MCPs'
responsibilities for the New York offices and all policies relating to Medicare patients and/or the
PPV compensation practice.  Plaintiffs believe Ms. Stewart resides in or near the Eastern District
of New York, and it would be more cost effective for her to travel to this district than to Atlanta,
Georgia.  Furthermore, given that she would be outside of the 100-mile radius from the Northern
District of Georgia, the Court would not be able to compel her attendance as a witness.

### 6.      Sharon Del Favero

Sharon Del Favero is the former Regional Director of Clinical Operations.  (*See* Sharon
Del Favero – LinkedIn; attached hereto as Exhibit DD.)  She was responsible for thirty (30)
branches located in New York, Pennsylvania, Connecticut, Massachusetts and Maine.  (*Id.*)  She
worked for Gentiva from July 2007 until March 2009.  (*Id.*)  During her employment with
Gentiva, she was responsible for improving patient care under Medicare "PPS" reimbursement
directly resulting in higher episodic payment with "reduced" direct costs; restored compliance
with regulations and condition level home healthcare branches; restored process with at risk
branches to prevent reduced venue loss and survey risks; insured clinical excellence and reduced

patient complaints." (*Id.*)  She was also responsible for hiring and orienting new staff as well as developing an orientation plan which was adopted by Gentiva.  (*Id.*)  Given her level of responsibility in the state of New York as well as other states, Plaintiffs feel she will provide valuable information relevant to the PPV compensation practice in conjunction with the required documentation and/or "charting" time that was required of all clinicians.  (*Id.*)  If this case is transferred to the Northern District of Georgia, she would be outside of the 100-mile radius.  The Georgia District Court would not be able to compel her attendance as a witness.

### 7.    Bruce Reardon

As previously stated, Gentiva's direct home nursing and therapy operations are organized into five (5) geographic regions, each staffed with clinical, operational and sales teams.  (*See* Ex. Y, p. 14.)  Like Marlene Harrell who is "[a] Regional Human Resources Director," Bruce Reardon is <u>the</u> Regional Human Resources Director for the geographic area that consists of New York, Connecticut, and Massachusetts. (*See* Def. Mem., Ex. D –Harrell Decl. ¶ 1); (*See  also* Bruce Reardon – LinkedIn; attached hereto as Exhibit EE.)

Plaintiffs believe Bruce Reardon will provide valuable information pertaining to human resources policies for this region.  (*Id.*)  For example, Plaintiffs believe he will have information relating to Clinicians' PPV compensation practice, (how the PPV system affected the Clinicians' performance); whether Clinicians were subject to disciplinary action for not meeting their minimum number of patient visits per week; and the disciplinary process used to address a Clinician's failure to meet such standards.  (*Id.*)  Because Bruce Reardon currently works for Gentiva, and is responsible for oversight in New York, Connecticut, and Massachusetts, his position certainly requires that he travel frequently to these three states.  It makes more sense to have him travel to the Eastern District of New York, (which he is intimately familiar with), than

to have Ms. Marlene Harrell who is responsible for a completely different region.  (*See* Def. Mem. Harrell Decl. ¶ 1); (*Id.*)  Upon information and belief, Mr. Reardon resides in the greater New York city area.  (*See* Ex. EE.)  It will be more cost-effective for Gentiva, if he travels to the Eastern District New York than it would be to travel to Atlanta, Georgia.

### 8.     Mary Morrisey-Gabriel

Upon information and belief, Mary Morrisey-Gabriel was responsible for Gentiva's company-wide sales and marketing initiatives.  (*See* Mary Morrisey-Gabriel – LinkedIn; attached hereto as Exhibit FF.)  Her focus was on the development of Gentiva's strategic plan and new branding strategy to better reflect Gentiva's mission, vision, and values.  (*See* Ex. Y, p. 20.)  Plaintiffs believe she will be able to provide relevant information regarding Gentiva's strategic plan for achieving its vision in expanding and increasing its government payers across various states while still maintaining uniformity in Gentiva's mission and values.  Plaintiffs believe Mary Morrisey-Gabriel resides in or near the Eastern District of New York.  (*Id.*)  It would be much more convenient and cost effective for her if she travelled within the state of New York than Atlanta, Georgia.

### 9.     Named Plaintiffs And Other Potential Witnesses

Plaintiffs Lisa Rindfleisch, Tiffany Melendez, and Michelle Gentile worked for Gentiva in Auburn, New York.  (Rindfleisch Decl. ¶ 3; Melendez Decl. ¶ 3; Gentile Decl. ¶ 3.)  They were hired in New York, and managers from Gentiva's regional office trained them on proper coding of patient treatment and visits.  It was in the state of New York where Plaintiffs were required to work over forty (40) hours a week on a regular basis to meet the minimum thirty (30) patient visits a week. (*See* Plaintiffs' Compl. ¶¶ 29, 39, 49, 59, and 70.)  Plaintiffs visited patients in different New York counties and never left the state of New York.  (Rindfleisch Decl. ¶ 12;

Melendez Decl. ¶ 12; Gentile Decl. ¶ 12.)  It was also in New York where they were required to attend mandatory conference meetings and educational training. (Rindfleisch Decl. ¶ 9; Melendez Decl. ¶ 9; Gentile Decl. ¶ 9.) Clinicians were paid on an hourly rate basis for such time, but not all of their hours were counted.  (*See* Compl. ¶¶ 2-3, 28, 30); (Rindfleisch Decl. ¶ 7; Melendez Decl. ¶ 7; Gentile Decl. ¶ 7.)  These mandatory conference meetings and training only took place in the state of New York.  It was also New York where they were required to engage in extensive "charting time" for each patient that had been visited that day.  (Rindfleisch Decl. ¶ 11; Melendez Decl. ¶ 11; Gentile Decl. ¶ 11.)

Gentiva asserts in a conclusory fashion that most of the members of the putative class are likely to reside closer to Atlanta than to Central Islip.  (*See* Def.'s Mem. p. 10.)  Plaintiffs disagree.  In fact, there have been no opt-in Plaintiffs from the state of Georgia that have joined this action.  Irrespective of where opt-in Plaintiffs are located, traveling will be necessary. (*See* Ex. Y, p. 9.)  As Gentiva's geographic map demonstrates, Gentiva's office locations are scattered across at least 39 states.  (*Id.*)  Whether witnesses are traveling to the Eastern District of New York or Northern District of Georgia, will be of no real consequence.  (*Id.*)  Since most of the named Plaintiffs are from the state of New York who were unlawfully paid pursuant to the FLSA and New York labor laws; and Gentiva has represented to New York and 22 others that its corporate office is located in this district, Gentiva has failed to clearly establish that convenience of the parties and the interests of justice require Plaintiffs to litigate their case in Georgia.  Such a ruling would cause serious financial and personal hardship on the named Plaintiffs.  (Rindfleisch Decl. ¶¶ 16-18; Melendez Decl. ¶¶ 16, 17-18; Gentile Decl. ¶¶ 16-18.)

## IV. **ARGUMENT**

### A.  **Gentiva Failed To Meet Its Burden Under 28 U.S.C. § 1404(a).**

As this Court has previously stated, the party moving to transfer venue, pursuant to 28 U.S.C. § 1404 has the burden of showing that transfer to another court is warranted and that there are factors "weighing heavily in favor of transfer." *Myers v. Lennar Corp.*, 2010 WL 1992200 (E.D.N.Y. May 17, 2010). 28 U.S.C. § 1404(a) provides in pertinent part, that "for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  In order to prevail on a Motion to Transfer pursuant to § 1404(a), the moving party bears the burden of establishing that the convenience of the parties and witnesses, and the interests of justice will be better served by transfer to another forum. *Bristol-Myers Squibb Co. v. Andrx Pharms., LLC,* 2003 WL 22888804 (S.D.N.Y. Dec. 5, 2003); *See Nabisco, Inc. v. Brach's Confections, Inc.*, 2000 WL 1677935 (S.D.N.Y. Nov. 8, 2000).  That burden is heavy; unless the balance is strongly in favor of the Defendant, the Plaintiffs' choice of forum should rarely be disturbed. *See Christina Canada, Inc. v. Wior Corp.,* 702 F. Supp. 461, 463 (S.D.N.Y. 1988) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).  While the decision to transfer an action lies within the sound discretion of the District Court, a Defendant's burden is high. *Earley v. BJ's Wholesale Club, Inc.*, 2007 WL 1624757 (S.D.N.Y. June 4, 2007); *Minett v. Time Warner*, 997 F.2d 1023, 1026 (2nd Cir. 1993).

Under § 1404(a), this Court must first determine whether venue is proper in the transferee forum. *Hernandez v. Graebel Van Lyons*, 761 F. Supp. 983, 986 (E.D.N.Y. 1991).  If the Court determines that the action could lie in either place, the Court must then determine the appropriate forum with reference to the convenience of parties and witnesses. *Earley,* 2007 WL 1624757, at *2; *See also Howard v. Four Seasons Hotels, Ltd.*, No. 96 Civ. 4587, 1997 WL 107633, at *1 (S.D.N.Y. Mar. 10, 1997).  To make this determination, courts have looked to a number of

15

factors: (1) convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight of plaintiffs' choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. *Farrior v. George Westin Bakeries Dist., Inc.*, 2009 WL 113774 (E.D.N.Y. Jan. 15, 2009); *Linzer v. EMI Blackwood Music, Inc.*, 904 F. Supp.207, 216 (S.D.N.Y. 1996); *Hernandez*, 761 F. Supp. at 987. A review of these factors in the instant case demonstrates that Gentiva failed to meet its burden. Therefore, transfer to the Northern District of Georgia is not warranted.

### B. Venue Is Proper In The Eastern District Of New York And Should Not Be Disturbed.

The Second Circuit has observed that "venue in the federal courts 'is a concept of convenience,' not a jurisdictional mandate…Whereas issues of jurisdiction relate to the basic authority of a court to hear and decide a case, venue, by contrast, is in the nature of convenience to litigants and subject to their disposition." *Moreno-Bravo v. Gonzales*, 436 F.3d 235, 258 (2nd Cir. 2006) (internal citations omitted). Interpreting the 1990 amendment to the federal civil venue statute, 28 U.S.C. § 1391, the Second Circuit has also held that venue may be had in more than one district, and that it is not the mission of a district court to determine the "best" venue but only to determine whether the forum chosen is one of what may be several proper venues. *Gulf Ins. Co. v. Glasbrenner,* 417 F.3d at 356 (2nd Cir. 2005) (finding venue in the Southern District of New York and in the District of New Jersey); *Panterra Engineered Plastics, Inc. v. Transportation F.Y.S. Solutions, LLC*, 455 F.Supp.2d 104, 114 (D. Conn. 2006).

The majority of the named Plaintiffs reside in the state of New York.  (Rindfleisch Decl. ¶ 2; Melendez Decl. ¶ 2; Gentile Decl. ¶ 2.)  Current and/or former witnesses who have material knowledge affecting Clinicians' hours of work, PPV policies relating to Clinicians in the geographical region, (including New York), either reside in or near the Eastern District of New York.  Also, Gentiva still recognizes its Melville, New York location as its principal place of business or one of two principal places of business across 22 states.  (*See* Exs. A-W.)  Therefore, venue in the Eastern District of New York is proper and should not be disturbed.

### C. Because The Factors Favor Maintaining This Case In The Eastern District of New York And Do Not Compel A Transfer To The Northern District of Georgia, Plaintiffs Ask The Court To Deny The Defendant's Motion.

#### 1. Plaintiffs' Choice Of Forum And Locus Of The Operative Facts Favor Plaintiffs.

"A Plaintiffs' choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the Defendant."  *Earley v. BJ's Wholesale Club, Inc.*, *supra*, at *2 (internal citations omitted).  Here, the Plaintiffs chose New York as the forum for their FLSA and New York claims because it is in this state where Gentiva maintained its principal place of business since incorporation; where the majority of the named Plaintiffs reside; and where many of the corporate witnesses reside and/or frequently travel to and from - given that New York is part of one of Gentiva's five (5) regions.  (*See* Exs. A-HH.)

Gentiva misses the mark in arguing that "Plaintiffs' choice of forum is not entitled to the weight generally accorded because a material connection or significant contact between the forum and the events allegedly underlying this cause of action is lacking."  (*See* Def. Mem., p. 18.)   Gentiva appears to base this conclusion on its repeated and inaccurate assertions, notwithstanding its corporate filings with this state and 22 other states, that Melville, New York

17

is its principal place of business; (*See* Exs. A-W); (s*ee also* Exs. JJ-OO.)   Gentiva's current and/or former corporate witnesses reside in or near this district; (*See* Exs. AA-DD); and New York named Plaintiffs worked exclusively in New York as is documented in the Plaintiffs' declarations.  (Rindfleisch Decl. ¶ 12; Melendez Decl. ¶ 12; Gentile Decl. ¶ 12.)  Thus, Gentiva's assertions that the Plaintiffs' work is "unrelated to New York," "the facts of this case have nothing to do with New York," and "New York bears absolutely no nexus to the events giving rise to this action" have no basis in fact and are without merit.  (*See* Def. Mem., pp. 12-16, 17-18, 19).

As previously indicated, three of the named Plaintiffs reside in the state of New York, and substantial material events that gave rise to Plaintiffs' FLSA and New York labor law overtime claims occurred in this state, and Gentiva regularly engages in business within this district through its current and/or former Clinicians who work or have worked at Gentiva's Brooklyn, Hauppage, Riverhood, and Westbury locations, and have also been subjected to the same violations under the FLSA and under the New York labor laws.  (*See* Def. Mem. Karr's Decl. ¶ 13.)  Moreover, New York named Plaintiffs have provided evidence that all of their work took place in New York.  (Rindfleisch Decl. ¶ 12; Melendez Decl. ¶ 12; Gentile Decl. ¶ 12.) Also, many of Gentiva's current and/or former managers responsible for the New York region reside in or near this district.  (*See* Exs. BB-FF.)

The Plaintiffs have more than demonstrated that there exists a sufficient basis to give their jurisdictional choice weight and deference.  On the other hand, requiring the New York named Plaintiffs to travel to Georgia would be an extreme hardship for all of them.  (Rindfleisch Decl. ¶¶ 16-19; Melendez Decl. ¶¶ 16-19; Gentile Decl. ¶¶ 16-18.)  Ms. Rindfleisch is a Director at a skilled nursing facility where she is responsible for fifty (50) residents while supervising

several Licensed Practical Nurses ("LPNs") and home health aides.  Since it is of primary importance to ensure the safety of her residents, she would be unable to do it from Atlanta, Georgia.  Also, Ms. Rindfleisch has four (4) children under the age of 14; one of them requires frequent medical attention, and since her husband travels frequently, she must stay close to home to take care of her children.  (Rindfleisch Decl. ¶ 17.)  If this case remains in this district, she can still be home by the end of the day if necessary.  (*Id.*)

Ms. Melendez is a single mother, and her child is very young.  She is also a Nurse Manager at a skilled nursing facility responsible for forty (40) residents while supervising two (2) LPNs and five (5) home health aides.  (Melendez Decl. ¶¶ 16-18.)  Given her circumstances, requiring her to travel to Atlanta, Georgia potentially affects her employment responsibilities as well as her responsibilities to her child.  (*Id.*)  If this case remains in this district, she can still be home by the end of the day if necessary.  (Melendez Decl. ¶ 16.)

Similarly, Ms. Gentile has two (2) children; and her husband is subject to travel with his job.  Likewise, childcare for her could be an issue if she had to stay overnight.  While she works, any travel outside of the state of New York could also affect her employment responsibilities. (Gentile Decl. ¶ 16).

### 2. The majority of the Plaintiffs Reside In New York And Have Performed All Of Their Work For Gentiva In This State.  The Convenience Of The Parties Favors The Plaintiffs.

During their employment with Gentiva, Plaintiffs were required to drive to various counties within the state of New York, but they were never required to leave the state of New York or further, travel to the state of Georgia.  (Rindfleisch Decl. ¶ 12; Melendez Decl. ¶ 12; Gentile Decl. ¶ 12).  The essence of Gentiva's business is its ability to provide Clinicians who can, in turn, provide home care to patients in their home in almost every state in this country. (Johnson Decl. ¶ 9.)  Several of Gentiva's officers who are responsible for the five (5) regions

which make up Gentiva's 400 locations across the country regularly travel to observe and ensure that the locations within their region are functioning according to Gentiva's uniform policies and procedures.  Because Gentiva is a national business and its officers regularly travel as part of their duties, it is easier for Gentiva's managers and officers to travel to the Eastern District of New York than for the named Plaintiffs to travel from the state of New York to Atlanta, Georgia. This factor also favors the Plaintiffs.

### 3.  The Convenience Of Witnesses And The Availability Of Process To Compel The Appearance Of Witnesses Favors The Plaintiffs.

As noted above, Gentiva's current and/or former witnesses either reside in or near this district or within the region comprising Massachusetts, New York, and Connecticut.  Since all of Gentiva's listed witnesses are presently officers and employees of Gentiva, Gentiva would not be required to compel them to appear in depositions or at trial.  On the other hand, litigation in Atlanta, Georgia will be highly inconvenient for some of Plaintiffs' witnesses.  Also, the Georgia Court will be unable to compel the appearance of certain Gentiva witnesses because they will be outside of the 100-mile radius.  This factor favors the Plaintiffs.

### 4.  The Location Of Relevant Documents Favors The Plaintiffs.

While Gentiva maintains that many of the relevant documents such as records relating to the management of Gentiva's compensation practice and human resources, are located in Atlanta, Plaintiffs have demonstrated, *supra*, that Gentiva's witnesses and documents relating to the PPV compensation practice and human resources information are also located at regional offices, <u>not</u> exclusively in Atlanta, Georgia.  A great deal of this information can be found in New York's regional office.  (*See* Ex. Y, p. 14.)  Furthermore, courts have not viewed this factor as particularly significant given "the technological age in which we live, with the widespread use of, among other things, electronic document production."  *Farrior*, 2009 WL 113774, at *6

(*citing Am. S.S. Owners Mut. Prot. & Indem. Ass'n., Inc. v. Lafarge N. Am., Inc.,* 474 F.Supp. 2d 474, 484 (S.D.N.Y. 2007) ("the location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents"); *DiStefano v. Carozzi N. Am., Inc.,* No. 98 Civ. 7137 (SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight.") (citations omitted).

Since Gentiva was already utilizing the PPV compensation practice prior to its merger with Healthfield, and there is a regional office for the state of New York, Connecticut and Massachusetts, which maintains human resources information as well as issues relating to the implementation of the PPV practice and given the closer proximity of the regional office to this district than to Georgia, this district is a proper location for this action. (*See* Ex. Y, p. 14.)  While considered neutral to this Court, this factor also favors the Plaintiffs.

### 5.   The Relative Means Of The Parties Favors The Plaintiffs.

Gentiva is a billion dollar corporation that has been headquartered in Melville, New York since its incorporation in 2000; and until this Motion, has represented to numerous state governments that its headquarters continues to be in the State of New York.  (*See* Exs. A-W; *see also* Exs. JJ-OO.) Furthermore, its officers regularly travel for issues relating to their internal policies and procedures involving the PPV compensation practice, human resources, complaints from Medicare, private insurance companies, and/or patients themselves.  Of the five (5) named Plaintiffs, three (3) of them are former Clinicians who worked exclusively for Gentiva in New York.  (Rindfleisch Decl. ¶ 3; Melendez Decl. ¶ 3; Gentile Decl. ¶ 3.)  As such, they have claims under the FLSA and New York labor laws.  (*See* Compl. ¶¶ 2, 3.)  Requiring the named Plaintiffs and witnesses who reside in or near this district, (and who are no longer employed with Gentiva),

to travel to Georgia would be significantly more burdensome for them than for Gentiva. (Rindfleisch Decl. ¶¶ 16-19; Melendez Decl. ¶¶ 16-19; Gentile Decl. ¶¶ 16-18.)  New York Plaintiffs have demonstrated that requiring them to travel to Atlanta, Georgia would impose significant financial and personal constraints and potentially affect their employment responsibilities.  (*Id.*)  On the other hand, Gentiva is a national business whose officers regularly travel to conduct their work, and they are more equipped financially and otherwise to travel for this matter.

Additionally, named Plaintiffs have identified several current and/or former Gentiva officers who either reside in or near this district.  (*See* Exs. BB-FF.)  This factor favors Plaintiffs' choice of forum.

### 6. Forum's Familiarity With Governing Law Favors Plaintiffs' Choice of Forum.

Among other factors that this Court has identified as relevant to a Motion to Transfer Venue, is the forum's familiarity with governing law.  *See Myers*, WL 1992200 at *7.  A New York District Court will be more familiar with New York state law claims than other courts. Plaintiffs have asserted their rights under both FLSA and New York labor laws.  (*See* Compl. ¶¶ 2, 3.)  While this Court may be required to familiarize itself with North Carolina wage and hour law, it is presently familiar with wage and hour law relating to New York and with hybrid claims involving FLSA and state wage and hour law.[5]  On the other hand, because district courts in Atlanta have very little familiarity with hybrid claims which involve both FLSA and state wage and hour law, and no familiarity with New York and North Carolina wage and hour law, the

---

[5] The Plaintiffs will bring a Motion for Rule 23 Class Certification at a later time.  It is well established in the Second Circuit that courts will certify hybrid actions that include both an opt-in FLSA collective claim and an opt-out state labor law Rule 23 class action, such as the lawsuit before this Court.  *See Guzman v. VLM, Inc.*, No. 07-cv-1126 (JG)(RER) 2008 WL 597186, at *10 (E.D.N.Y. Mar. 02, 2008) ("[i]t is settled in the Second Circuit that FLSA does not preempt state wage and hour laws…that being the case, there is no reason that FLSA's collective action procedure is incompatible with maintaining a state law class action over the same conduct.") (citing *Overnight Transp. Co. v. Tianti*, 926 F.2d 220, 222 (2nd Cir. 1991)).

Georgia District Court will have a greater burden to become familiar with the relevant law.  This factor also favors the Plaintiffs' choice of forum.

### 7.  Interests Of Justice.

The interests of justice is a separate component of the Court's § 1404(a) transfer analysis. *See Tucker Anthony, Inc. v. Bankers Trust Co.*, 1994 WL 9683, at *8 (S.D.N.Y. Jan. 10, 1994). The interests of justice are based on the totality of the circumstances.  New York Plaintiffs have demonstrated that requiring them to travel to Atlanta, Georgia would impose significant financial and personal constraints and potentially affect their employment responsibilities.  (Rindfleisch Decl. ¶¶ 16-19; Melendez Decl. ¶¶ 16-19; Gentile Decl. ¶¶ 16-18.)  On the other hand, Gentiva is a national business whose officers regularly travel to conduct their work, and they are more equipped financially and otherwise to travel for this matter.  Additionally, Gentiva's primary place of business is still recognized as located in this district. (*See* Exs. A-W.)

The interests of justice support maintaining this action in this district because Gentiva had until this Motion represented to the state of New York and 22 other states that its principal place of business is in this district; Plaintiffs reside in the state of New York, performed all of their work in the state of New York, and were subjected to violations under both the FLSA and New York labor laws.  (Rindfleisch Decl. ¶¶ 2, 3, 7; Melendez Decl. ¶¶ 2, 3, 7; Gentile Decl. ¶¶ 2, 3, 7.)

Finally, the Court should reject Defendant's unsupported notion that Plaintiffs engaged in forum shopping.  Plaintiffs determined that given Gentiva's representations to numerous states that its headquarters were in New York, and a majority of the named Plaintiffs reside in the state of New York, Plaintiffs decided the better forum suited for this case was the Eastern District of New York.  In fact, Plaintiffs believe that with the exception of this District's extensive familiarity with New York labor law, the Eleventh Circuit would be no less favorable than the

Second Circuit to address Plaintiffs' claims.  This factor also favors the Plaintiffs' choice of forum.

Gentiva seeks transfer of this litigation to Atlanta, Georgia but has not met its burden of <u>clearly</u> justifying such a transfer.  The interests of justice and the relevant factors at issue in this case strongly favor Plaintiffs and the retention of their choice of forum in the state of New York.

## **CONCLUSION**

For the above reasons, Plaintiffs respectfully request that Gentiva's Motion to Transfer Venue be DENIED.

Dated: September 8th, 2010.

Respectfully Submitted,

*/s/Gilda A. Hernandez*
Of Counsel

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Christine E. Webber
1100 New York Avenue, NW
Suite 500
Washington, DC  20005
(202) 408-4600
cwebber@cohenmilstein.com

**MARTIN & JONES, PLLC**
H. Forest Horne, Jr., NCSB # 16678
Gilda A. Hernandez, NCSB # 36812
410 Glenwood Avenue, Suite 200
Raleigh, North Carolina 27603
(919) 821-0005
hfh@m-j.com

***Counsel for Plaintiffs***

24

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 8th day of September, 2010, I electronically filed the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. §1404 using the CM/ECF system which will send notification of such filing to:

LITTLER MENDELSON, P.C.
Michael Weber, Esq.
Amy S. Dononvan, Esq.
Sara Danielle Sheinkin, Esq.
900 Third Avenue
New York, New York 10022-3298
(212) 583-9600

mweber@littler.com
adonovan@littler.com
ssheinkin@littler.com

                                    /s/Gilda A. Hernandez
                                    Of Counsel

25