UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LISA RINDFLEISCH, TIFFANY MELENDEZ, MICHELLE GENTILE, LAURIE BAKER and CHRISTINA NELMES, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GENTIVA HEALTH SERVICES, INC.,<br><br>Defendant. | Case No. CV 10-2111 (JFB)(ARL) |

**REPLY BRIEF IN SUPPORT OF GENTIVA HEALTH SERVICES, INC.'S
MOTION TO TRANSFER VENUE**

LITTLER MENDELSON, P.C.
A. Michael Weber
Sara Danielle Sheinkin
Amy S. Donovan
900 Third Avenue
New York, New York 10022
212.583.9600

Attorneys for Defendant
Gentiva Health Services, Inc.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................................. 1

II. IT IS MORE FAVORABLE TO THE PARTIES TO TRANSFER THIS ACTION........................................................................................................................ 1

    A. Plaintiffs Would Not be Inconvenienced by a Transfer ..................................... 1

        1. None of the Named Plaintiffs Reside in the Eastern District ................. 2

        2. A Transfer Would Reduce the Inconvenience for the Plaintiff Class ................................................................................................................. 3

    B. Transfer Would Greatly Reduce Gentiva's Inconvenience ............................... 4

III. THE LOCUS OF OPERATIVE EVENTS FAVORS TRANSFER .............................. 6

IV. THE CONVENIENCE OF WITNESSES FAVORS TRANSFER ............................... 7

V. THE PARTIES' RELATIVE MEANS DO NOT PRECLUDE TRANSFER ............... 8

VI. FAMILIARITY WITH LOCAL LAW DOES NOT DEFEAT TRANSFER ............... 9

VII. CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Butcher v. Gerber Products Co.*, 1998 U.S. Dist. LEXIS 11869 (S.D.N.Y. Aug. 3, 1998) .................................................................................................................. 6

*Cain v. NYS Bd. of Elections*, 630 F. Supp. 221 (E.D.N.Y. 1986) ...................... 2

*Davis v. Lenox Hill Hosp.*, 2004 U.S. Dist. LEXIS 17284 (S.D.N.Y. Sept. 1, 2004) ................................................................................................................ 10

*Earley v. BJ's Wholesale Club, Inc.*, 2007 U.S. Dist. LEXIS 40125 (S.D.N.Y. June 4, 2007) ..................................................................................................... 6

*Farrior v. George Weston Bakeries Distribution., Inc.*, 2009 U.S. Dist. LEXIS 2636 (E.D.N.Y. Jan. 15, 2009) ....................................................................... 5, 9

*Foster v. Nationwide Mutual Ins. Co.*, 2007 U.S. Dist. LEXIS 95240 (N.D. Cal. Dec. 14, 2007) ...................................................................................................... 9

*Frame v. Whole Food Market, Inc.*, 2007 U.S. Dist. LEXIS 72720 (S.D.N.Y. Sept. 24, 2007) ...................................................................................................... 9

*Koster v. Lumbermens Mut. Cas.*, 330 U.S. 518 (1947) ...................................... 3

*Luna v. Del Monte Fresh Produce (Southeast), Inc.*, 354 Fed. Appx. 422 (11th Cir. 2009) ............................................................................................................ 10

*Luna v. Del Monte Fresh Produce (Southeast), Inc.*, No. 1:06-cv-02000-JEC (N.D. Ga. Mar. 3, 2009) ..................................................................................... 10

*Nationwide Mutual Ins. Co.*, 2007 U.S Dist. LEXIS 95240 (N.D. Cal. Dec. 14, 2007) .................................................................................................................... 3

*Olympia Group Inc. v. Cooper Indus., Inc.*, 2001 U.S. Dist. LEXIS 6187 (E.D.N.Y. 2001) .................................................................................................... 2

*Polin v. Conductron Corp.*, 340 F. Supp. 602 (E.D. Pa. 1972) ........................... 6

*Posven v. Liberty Mutual Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004) .......... 9

*Pyramid Stone Int'l Corp. v. Crosman Corp.*, 1997 U.S. Dist. LEXIS 1610 (S.D.N.Y. Feb. 18, 1997) .................................................................................... 2

*Royal Ins. Co. of America v. Tower Records, Inc.*, 2002 U.S. Dist. LEXIS 20109 (S.D.N.Y. Oct. 22, 2002) ..................................................................................... 6

*Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313 (E.D.N.Y. 2010) ........ 8

*U.S. v. General Motors Corp.*, 183 F. Supp. 858 (S.D.N.Y. 1960) .................................................. 6

*Umbriac v. American Snacks, Inc.*, 388 F. Supp. 265 (E.D. Pa. 1975) ........................................... 3

**Statutes**
13 N.C. Admin. C 12 .0102-03 ........................................................................................................ 9

## I. PRELIMINARY STATEMENT

In an ineffective attempt to argue that this District is a more convenient forum for this action than the Northern District of Georgia, Plaintiffs attempt to hide the fact that they have asserted their claims as a nationwide class action and focus their convenience argument solely on behalf of three plaintiffs. Plaintiffs also attempt to hide the fact that these three plaintiffs reside over three hundred miles away from this Court, by repeatedly asserting that they live in New York, ignoring any distinction between the Eastern and Northern Districts. Further, Plaintiffs fail to address the fact that the other two named plaintiffs live in North Carolina and that there are thirty-six other opt-in plaintiffs residing outside the state of New York who wish to participate in this action. Plaintiffs' omissions demonstrate the meritless nature of their opposition to this Motion to Transfer.

The simple truth is that none of the current named or opt-in plaintiffs reside, or performed work for Gentiva, in the Eastern District of New York. Each and every plaintiff, including those that reside in upstate New York, would have to travel to testify in this action. Any inconvenience resulting from this travel would occur regardless of whether the action proceeds in the Eastern District of New York or in Atlanta. But the inconvenience to Gentiva would be greatly reduced by a transfer. In their brief, Plaintiffs cite to general principles of law without any application to these facts. Upon a review of all relevant factors and legal authority, it is clear that the convenience of the parties and witnesses and interests of justice would be better served by transferring this action.

## II. IT IS MORE FAVORABLE TO THE PARTIES TO TRANSFER THIS ACTION

### A. Plaintiffs Would Not be Inconvenienced by a Transfer

Plaintiffs have asserted their claims on behalf of a class of "at least several thousand persons." (Compl. ¶86.) Currently, there are five named and thirty-six opt-in plaintiffs in this

1

action. (Decl. of A. Michael Weber, attached as Exhibit ("Ex.") A, ("Weber Dec."), ¶2.) Yet Plaintiffs' Brief discusses the convenience factor for only three of those plaintiffs, ignoring all others.

### 1. None of the Named Plaintiffs Reside in the Eastern District

Plaintiffs place great weight on the fact that three of the named plaintiffs reside in and worked for Gentiva in the State of New York. But, these plaintiffs did *not* reside in or work for Gentiva within the Eastern District of New York. (Def. Br. Sec. II(D).) In fact, they reside more than three hundred miles away (Weber Dec. ¶3-5); a fact Plaintiffs conveniently ignore.

Plaintiffs disregard any distinction between New York State as a whole and the Eastern District of New York in particular. But courts do recognize a distinction between separate districts, even within the same state. *See, e.g. Olympia Group Inc. v. Cooper Indus., Inc.*, 2001 U.S. Dist. LEXIS 6187, at *6-7 (noting that although corporation had connections to the Eastern and Northern Districts of New York, it had no connection to the Southern District); *Pyramid Stone Int'l Corp. v. Crosman Corp.*, 1997 U.S. Dist. LEXIS 1610, at *45-47 (S.D.N.Y. Feb. 18, 1997) (transferring action from the Southern to Western District of New York); *Cain v. NYS Bd. of Elections*, 630 F. Supp. 221 (E.D.N.Y. 1986) (transferring action from the Eastern to Northern District of New York).

Moreover, Plaintiffs have misrepresented the amount of time it would take them to travel between Auburn, New York, where these three named plaintiffs reside, and Central Islip. The three plaintiffs' nearly identical declarations all claim that Central Islip would be a 3.5 hour drive or a 45-minute flight from Auburn. (Pls. Br. at Exs. GG ¶18, HH ¶18 and II ¶17.)[1] In reality, however, it is over a five hour drive between Auburn and Central Islip. (Weber Dec ¶¶3-5.)

---

[1] Notably, no other plaintiffs have submitted declarations claiming that this District is a more convenient forum for them than the Northern District of Georgia.

2

Plaintiffs also fail to mention that their 45-minute flight from Auburn actually takes closer to an hour and a half and would only get them to JFK, which is still almost an hour away from Central Islip. (*Id.* at ¶¶7-8.) Given these facts, there is no legitimate basis for Plaintiffs to suggest that a trip to Atlanta would be more inconvenient for these three plaintiffs.

### 2. A Transfer Would Reduce the Inconvenience for the Plaintiff Class

Plaintiffs' argument that this Court is a more convenient forum because "most of the named Plaintiffs are from the State of New York" is meritless. (Pls. Br. p. 14.) None of the Plaintiffs are from this District. (*See* Def. Br. Ex. E., ¶2.) Moreover, Plaintiffs have opted to bring their claims in this action on behalf of a purported nationwide class. Their individual convenience and individual choice of forum should, thus, be given considerably less weight. *Umbriac v. American Snacks, Inc.*, 388 F. Supp. 265 (E.D. Pa. 1975). The Court should, instead, consider the location of all putative class members. *Foster v. Nationwide Mutual Ins. Co.*, 2007 U.S Dist. LEXIS 95240, at *11-13 (N.D. Cal. Dec. 14, 2007). Indeed, the Supreme Court has long directed that district courts consider the *potential* number of plaintiffs, based upon the allegations in the Complaint, as opposed to the *actual* number. *See Koster v. Lumbermens Mut. Cas.*, 330 U.S. 518, 524 (1947) ("[w]here there are hundreds of potential plaintiffs . . . all of whom could with equal show of right go into their many home courts, the [forum] claim of any one plaintiff . . . is considerably weakened.").

Plaintiffs recognize that "[i]rrespective of where opt-in Plaintiffs are located, traveling will be necessary." (Pls. Br. p. 14.) However, the majority of current and putative plaintiffs in this action are closer to Atlanta than to Central Islip. (Weber Dec. ¶2.) And the Atlanta courthouse is only a short drive away from the Atlanta airport. (Def. Br. Ex. E, ¶7.) Accordingly, it appears that travel to Atlanta would be easier and less expensive than travel to

3

Central Islip for the majority of the current and putative class members.[2]

### B. Transfer Would Greatly Reduce Gentiva's Inconvenience

Contrary to Plaintiffs' assertions, Gentiva's headquarters are located in Atlanta, Georgia. (Decl. of John Karr, attached as Ex. B, ("Karr Dec."), ¶3; Decl. of Pamela L. Dunn, attached as Ex. C, ("Dunn Dec."), ¶6; Decl. of Teresa Irish, attached as Ex. D, ("Irish Dec."), ¶9.) Having no real basis to suggest that this Court is more convenient for themselves, Plaintiffs attempt to convince this Court that Gentiva really operates out of Melville, despite its sworn declarations and SEC filings to the contrary. Undoubtedly, Gentiva is in a better position to state where it is headquartered than Plaintiffs' counsel.

Gentiva was formerly headquartered in Melville, New York. (Karr Dec. ¶3; Irish Dec. ¶3.) But, as previously explained, Gentiva began moving its operations to Atlanta, Georgia after its February 2006 merger with Healthfield Home Care, Inc. ("Healthfield"). (Def. Br. p. 4; Irish Dec. ¶3.) Within a year after the merger, the majority of the senior executive group was located in Atlanta. (Irish Dec. ¶6.) By the third quarter of 2007, the purchase department and its files were relocated to Atlanta. (*Id.* at ¶7.) On September 15, 2008, all human resources, compensation, marketing and policy administration functions and all files related thereto were relocated to Atlanta. (*Id.* at ¶8.) By this point, Gentiva had transitioned nearly all of its operations in Melville to Atlanta and only thirty-five employees remained in Melville, none of whom had any duties related to employee compensation or human resources. (*Id.*)

In early 2009, Gentiva's headquarters were officially relocated to Atlanta. (*Id.* at ¶9.) By May 2010, Gentiva had appointed new senior executives in Atlanta to succeed the senior executives formerly located in Melville. (*Id.*) These appointments completed Gentiva's planned

---

[2] In any event, Plaintiffs will have minimal, if any, reason to travel for this action. Gentiva will conduct Plaintiffs' depositions regionally near where the deponent is located. (Weber Dec. ¶9.)

management succession to its Atlanta headquarters. (*Id.*) Currently, there are only eight employees working from Melville. (*Id.* at ¶10.) These employees are primarily non-managerial staff in Gentiva's Contracts Department and have no duties related to employee compensation or any human resource function. (*Id.*) They will not be witnesses in this litigation.

Unable to dispute any of these facts, Plaintiffs have relied solely on state agency websites listing a Melville address, which is not the address of Gentiva's principal place of business. (*See* Pls. Br. Exs. A-W; Dunn Dec. ¶6.) In many cases, the filings upon which the websites rely have not been modified or corrected since Gentiva moved its headquarters to Atlanta in 2009. (*See* Dunn Dec. ¶¶3, 7, 9.) As Gentiva reviews and updates these filings, it reports current information regarding its office address, officers, and other data. (Dunn Dec. ¶¶7, 10; *see also* Pls. Br. Ex. B, p.6 (updating filing to Georgia Secretary of State on July 15, 2010).

Until March 2010, two paralegals were responsible for updating these reports. (Dunn Dec. ¶4.) One of those paralegals, Pam Dunn, began updating Gentiva's principal business address to Atlanta in her filings after March 2009, consistent with Gentiva's reports to the SEC on and after March 12, 2009. (Dunn Dec. ¶7.) The other of the two Gentiva paralegals preparing these filings, however, typically reported no changes to the state agencies before her June 2010 separation from Gentiva. (Dunn Dec. ¶8.)[3] These website listings, therefore, do not accurately identify Gentiva's headquarters. Since March 2009, Gentiva's principal place of business has been and continues to be Atlanta. (*See* Dunn Dec. ¶6; Karr Dec. ¶3; *see also* Def. Br. p.3.) The fact that Gentiva's headquarters used to be in this District does not preclude transfer. *Farrior v. George Weston Bakeries Distribution., Inc.*, 2009 U.S. Dist. LEXIS 2636, at *24 n.4 (E.D.N.Y. Jan. 15, 2009).

---

[3] Some filings were also subject to other scrivener's errors. For example, North Carolina erroneously attributes the surname of former corporate officer Stephen B. Paige to all of the Company's officers. (See Pls. Br. Ex. B.)

5

For Gentiva and its witnesses, proceeding with this action in Atlanta would be more convenient than proceeding in this Court. (Def. Br. Sec. II(B)(4).) Unlike Plaintiffs, who will have to travel regardless of where the action proceeds, the majority of Gentiva's executive witnesses will not need to travel if the action is transferred to Atlanta. (*See* Def. Br. Sec. II(B)(4).) Additionally, Atlanta would be a more convenient forum because these witnesses:

> can perform their regular duties except when actually testifying or preparing testimony. They need not neglect their regular duties for an entire day, or lose time waiting to testify, awaiting recall to the stand, or awaiting the settlement of procedural matters among the attorneys and the court. Even on days on which such a witness testifies, he can devote non-court and evening hours to his regular work and to conferring with associates, subordinates, customers and suppliers. He can accomplish this in his familiar working place, with tolls, files and help at hand.

*U.S. v. General Motors Corp.*, 183 F. Supp. 858, 861 (S.D.N.Y. 1960); *accord Polin v. Conductron Corp.*, 340 F. Supp. 602 (E.D. Pa. 1972). Each witness identified by Gentiva indicated that he or she does not regularly travel to the Eastern District on business, and that such travel would be professionally and personally disruptive. (*See* Def. Br. Sec. II(B)(4).) Any occasional travel to the Eastern District does not support denial of transfer. *See, e.g., Butcher v. Gerber Products Co.*, 1998 U.S. Dist. LEXIS 11869, at *14-15 (S.D.N.Y. Aug. 3, 1998) (transferring action where employees occasionally traveled to transferor district on business).

Because Plaintiffs have asserted a nation-wide class action, none of the plaintiffs are a resident of this District and Gentiva and the majority of its witnesses are located in the transferee forum, the convenience of parties and witnesses favor transfer. *Earley v. BJ's Wholesale Club, Inc.*, 2007 U.S. Dist. LEXIS 40125, at *7 (S.D.N.Y. June 4, 2007); *Royal Ins. Co. of America v. Tower Records, Inc.*, 2002 U.S. Dist. LEXIS 20109, at *18 (S.D.N.Y. Oct. 22, 2002).

### III. THE LOCUS OF OPERATIVE EVENTS FAVORS TRANSFER

In its moving papers, Gentiva explained that, if any one location were considered central

6

to Plaintiffs' allegations this action, it would be Atlanta, where substantial aspects of Gentiva's pay-per-visit compensation policies and practices were formulated. (Def. Br. p.18-19.) Based on nothing but unfounded speculation, Plaintiffs dispute that the pay-per-visit system was substantially formalized in and administered from Atlanta, stating that Gentiva paid some (unidentified) clinicians on a per-visit basis before moving to Atlanta. (*See* Pls. Br. p.2.) Gentiva is not aware of any clinician it paid on a "per-visit" basis, as that term is alleged to apply to the Plaintiffs in this suit, prior to 2006. (Karr Dec. ¶21; Decl. of John R. Potapchuk, attached as Ex. E, ("Potapchuk Dec.") ¶4.) The isolated statements cited by Plaintiffs are believed to apply to per-diem clinicians, or to a prior compensation plan, who would not be proper class members in this action. (*See* Pls. Br. p.2, Ex. Y.) Accordingly, the locus of operative events favor transfer.

### IV. THE CONVENIENCE OF WITNESSES FAVORS TRANSFER

Without factual support, Plaintiffs identify several witnesses they believe may have information relevant to this case. (Pls. Br. Sec. III(D).) As an initial note, the majority of these witnesses do not reside in the Eastern District of New York. (Karr Dec. ¶¶9, 12, 16, 20.) It appears that Plaintiffs pulled their names from corporate documents, which have no relationship to the facts at issue in this action. Many of the witnesses identified by Plaintiffs (Dan Locker, Michele Rosenblum, Sue-Ellen Stuart, Sharon DelFavero and Bruce Reardon) are individuals who are or were employed by Gentiva in the New York region. (Karr Dec. ¶5.) Plaintiffs suggest that these individuals would have knowledge about Gentiva's operations in New York. (Pls. Br. Sec. III(D).) Even if this is true, Plaintiffs blatantly ignore the fact that each of these witnesses has several counterparts located in various states across the country who would have similar knowledge concerning operations in their respective areas. (Karr Dec. ¶¶5, 7, 8, 10, 11, 13-16, 18, 19.) Most of those counterparts are located closer to Atlanta than to Central Islip,

7

New York. (*Id.*)

The other individuals identified by Plaintiffs (John Potapchuk, Bob Creamer and Mary Morrisey-Gabriel) do not have information relevant to this action.[4] (Potapchuk Dec. ¶¶3-4; Decl. of Bob Creamer, attached as Ex. F, ("Creamer Dec."), ¶¶6-7; Decl. of Mary Morrisey-Gabriel, attached as Ex. G, ("Morrisey Dec."), ¶¶3-5.) None of these individuals were involved in creating, implementing or administrating Gentiva's pay per visit compensation system. (Potapchuk Dec. ¶3; Creamer Dec. ¶8; Morrisey Dec. ¶5.)

The convenience of witnesses favors transfer. As stated above, several of the witnesses identified by Plaintiffs have no relevant information. The witnesses who do have relevant knowledge have counterparts with similarly relevant knowledge all over the country. Since most of those individuals reside closer to Atlanta than New York, travel to Atlanta would be more convenient than Central Islip.

## V. THE PARTIES' RELATIVE MEANS DO NOT PRECLUDE TRANSFER

Plaintiffs argument that traveling to Atlanta would "impose significant financial and personal constraints" on Plaintiffs has minimal weight here. (Pls. Br. p. 22.) Plaintiffs have not produced any documentation suggesting that litigating this case in Atlanta, rather than Central Islip, would be prohibitively expensive. Moreover, Plaintiffs have already indicated a willingness to travel by selecting a forum that is more than three hundred miles away. Regardless, as explained above, any travel required by Plaintiffs will be minimal. Accordingly, the relative means of the parties factor favors transfer. *See e.g. Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313 (E.D.N.Y. 2010) (finding that the "relative means of the parties" factor is not especially significant where plaintiff produced no documentation that litigating a case in

8

the transferee court would be prohibitively expensive.); *Frame v. Whole Food Market, Inc.*, 2007 U.S. Dist. LEXIS 72720, at *17-18 (S.D.N.Y. Sept. 24, 2007) (granting motion to transfer where plaintiff did not demonstrate that transfer would be unduly burdensome, especially where plaintiff initially selected a distant forum).

## VI. FAMILIARITY WITH LOCAL LAW DOES NOT DEFEAT TRANSFER

Plaintiffs have asserted claims under Federal Law and New York and North Carolina law. All district courts are presumed to have expertise in adjudicating FLSA claims. *Farrior*, 2009 U.S. Dist. LEXIS 2636, at *29-30 n.6. While Plaintiffs do not question *this* Court's ability to adjudicate claims under North Carolina law, Plaintiffs suggest that a judge in the Northern District of Georgia would be incapable of adjudicating North Carolina or New York claims.[5] (Pls. Br. p. 22-23.) Plaintiffs suggestion is entirely baseless.

A forum's familiarity with the governing law is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved. *Posven v. Liberty Mutual Ins. Co.*, 303 F. Supp. 2d 391, 405 (S.D.N.Y. 2004); *see also Foster v. Nationwide Mutual Ins. Co.*, 2007 U.S. Dist. LEXIS 95240, at *16 (N.D. Cal. Dec. 14, 2007) (where a federal court's jurisdiction is based on the existence of a federal question, one forum's familiarity with supplemental state law claims should not override other factors favoring a different forum). Plaintiffs have not identified any complex state law issues. In fact, in this case, the state law issues are likely to be significantly less complex than the federal issues. Plaintiffs' claims are largely premised on their assertion that they are not exempt professional

---

[4] Plaintiffs also reference Gentiva Chairman of the Board and former CEO Ron Malone as someone with relevant knowledge. (See Pls' Br. p. 7.) Although Plaintiffs identify him as a "New York resident," Mr. Malone is a longtime resident of the Greenville, South Carolina area. (Karr Dec. ¶ 20.)

[5] Since North Carolina claims will be adjudicated in a foreign jurisdiction regardless of venue, Gentiva focuses on New York claims here. North Carolina exemption law is similar to the FLSA. *See* 13 N.C. Admin. C 12 .0102-03 (relying on federal exemption interpretations as controlling or persuasive authority in state enforcement actions).

9

employees because they were not paid on a salary or fee basis. Unlike "the FLSA, however, employers claiming a professional exemption under [New York state law] need not satisfy a 'salary' test, only a duties test.") (internal quotations omitted). *Davis v. Lenox Hill Hosp.*, 2004 U.S. Dist. LEXIS 17284, at *22 (S.D.N.Y. Sept. 1, 2004); *see also* 12 N.Y.C.R.R. § 142-2.14(c)(4)(iii) (setting forth requirements for professional exemption). It is likely, therefore, the Court will not have to consider specific New York laws in adjudicating Plaintiffs' claims.[6]

On balance, the factors discussed herein and in Gentiva's moving papers favor transfer. The most important factors, convenience of the parties and witnesses, strongly weigh in favor of transfer. The transfer will result in minimal, if any, inconvenience to the Plaintiff class and will greatly reduce the inconvenience to Gentiva. In such circumstances, transfers are routinely granted.

## VII. CONCLUSION

As discussed herein and in Gentiva's moving papers, the equities in this action favor the transfer of this case from this Court to the Northern District of Georgia (Atlanta Division).

Dated: New York, New York.  
September 23, 2010

By: /s A Michael Weber  
A. Michael Weber (mweber@littler.com)  
Sara D. Sheinkin (ssheinkin@littler.com)  
Amy S. Donovan (adonovan@littler.com)  
LITTLER MENDELSON, P.C.  
900 Third Avenue  
New York, NY 10022.3298  
212.583.9600

*Attorneys for Defendant.*

---

[6] Plaintiffs also claim, without legal support, that Georgia courts have little familiarity with hybrid claims. (Pls. Br. p. 22-23.) There is no basis for this assertion. While the Georgia docket is notably less crowded than the Eastern District of New York, (Def. Br. p. 21-2.2), the Northern District of Georgia has capably managed these complex actions. *See, e.g., Luna v. Del Monte Fresh Produce (Southeast), Inc.,* No. 1:06-cv-02000-JEC (N.D. Ga. Mar. 3, 2009) (granting conditional certification of § 216(b) action but denying certification of Rule 23 claims), *denial of Rule 23 certification affirmed by* 354 Fed. Appx. 422 (11th Cir. Ga. 2009 (not addressing § 216(b) claims).